**Zelma BRAME, Respondent,**

v.

**BANK OF GRANDIN, Appellant.**

**No. 17971.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 13, 1992.

Mark A. Kennedy of Kennedy & Kennedy, Poplar Bluff, for appellant.

Mary L. Dilks of L. Joe Scott & Daniel T. Moore, Poplar Bluff, for respondent.

MONTGOMERY, Presiding Judge.

Zelma Brame (Zelma) sued the Bank of Grandin (Bank) for $6,673.75 which Zelma

paid the Bank on her deceased husband's promissory note. Zelma claimed she received no consideration when she signed her husband's note some four days after his death.

After trial before the court, a judgment was rendered in favor of Zelma for $6,673.75. The Bank appeals.

The Bank's first point relied on is:

The trial court erred in entering a judgment in favor of the respondent and against the appellant in the sum of Six Thousand Six Hundred Seventy-three and 75/100 Dollars ($6,673.75) on Count I of Respondent's petition because the forbearance of the bank from making demand on the note for payment and allowing respondent to retain possession of the skidder to sell to apply to the note was adequate consideration for her signature on the note.

The pertinent facts must be recounted to resolve this point. In doing so, we observe that where neither party requests findings of fact and the trial court makes none (as in this case), all fact issues shall be considered as having been found in accordance with the result reached. Rule 73.01(a)(2);[1] *Ludlow v. Ahrens*, 812 S.W.2d 245, 248 (Mo.App.1991). We accept as true the evidence and inferences from it favorable to the result below and disregard contrary evidence, *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989), recognizing the trial court was free to believe or disbelieve all, part or none of the testimony of any witness. *Id.* This Court is to affirm the trial court's determination unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or it erroneously applies the law. *In re Marriage of Lafferty*, 788 S.W.2d 359, 361 (Mo.App.1990); Rule 73.01(c).

Viewing the evidence as we must, Zelma went to the Bank on January 17, 1989, four days after the death of Lowie Brame, her husband. She spoke with the Bank's president, Donald Combs, telling him she came to pay the interest on her husband's loan because he "always paid his debts." The note was dated January 8, 1985, and was made only by Lowie Brame. The collateral securing the note on January 17, 1989, was a John Deere log skidder. While talking with Mr. Combs, Zelma testified, "[T]hen [Combs] went out front and brought this envelope in there, and he said, 'Would you care to sign this—put your name on this?' And I just put it on there."

Additional questions to Zelma brought these responses:

Q. What was it?

A. It was that note that my husband had taken out.

Q. And this was the first time that you had signed anything; is that right?

A. That's right.

Q. Concerning this loan?

A. That's right.

Q. When you signed that, did you receive anything from the Bank of Grandin or—or Mr. Combs?

A. No.

Q. You didn't get any money?

A. No.

Q. He didn't give you anything else? You just signed the note?

A. I just signed the note.

Zelma insisted she never asked Mr. Combs if she could keep the skidder in order to sell it.

The only other witness to testify was Donald Combs. Regarding the January 17, 1989, meeting with Zelma, he testified:

Q. And what did she tell you at that time?

A. Well, she said that she wanted to pay the interest on the loan that— that she knew her husband always paid [his] bills and that he'd want it paid.

Q. Uh-huh. And she paid the interest that was due up to the date to that time?

A. Yes.

Q. All right. Did she tell you anything else on that date?

---

1. Rule references are to Missouri Rules of Court (1992).

A. Well, that she would try to—you know, try to sell the skidder to pay off the loan.

Q. And did she indicate or tell you that she wanted to keep it and try to sell it?

A. Well, she—she said that she was going to try to sell it.

Q. Okay. And you agreed that she could—that you—or, excuse me. Did you agree that she could sell—keep the skidder and try to sell it?

A. Yes.

Mr. Combs' testimony regarding Zelma signing the note appears as follows:

Q. And did you present this note to her?

A. Yes.

Q. Did she look it over?

A. Well—

Q. She knew it was a note?

A. She signed the note. I'm not sure just how much she looked it over, but she—

Q. But she signed the note?

A. Uh-huh. It was presented to her.

Q. Yes. And then was it consideration for her signing the note the fact that she could keep the skidder and try to sell it?

A. Yes.

During cross-examination Mr. Combs candidly admitted he never advised Zelma she was not responsible for her husband's note upon his death.

After January 17, 1989, Zelma made various payments of principal and interest to the Bank totaling $6,673.75. She later determined she had no obligation to pay the note, advised the Bank to take the skidder back, and demanded repayment of the money previously paid.

Based on this rather meager record the trial court determined Zelma received no consideration in return for her signature creating liability on her husband's note. The record is devoid of any evidence on whether the note was delinquent on January 17, 1989. Arguably, if delinquent, the Bank's forbearance to repossess the skidder would have provided consideration to

Zelma. Yet, the trial court must have believed Zelma never asked to keep the skidder in order to sell it, and her testimony is entirely consistent with such belief.

"Consideration sufficient to support a contract may be either a detriment to the promisee or a benefit to the promisor." *Nat'l Advertising Co. v. Herold,* 735 S.W.2d 74, 78 (Mo.App.1987).

[A]ctual forbearance or a promise or agreement to forbear to sue on a claim on which the creditor has the right to sue, *or to exercise any legal right,* is consideration for a promise on commercial paper even though the promise is by a third person who is a stranger to the original obligation, irrespective of interest in, or benefit from, the delay, the disadvantage of forbearance being sufficient.

11 Am.Jur.2d *Bills and Notes* § 230 (1963) (emphasis added). *See Connersville Casket Co. v. Gist,* 355 S.W.2d 374, 376 (Mo. App.1962); *Rubinic v. Sabados,* 264 S.W.2d 935, 936–37 (Mo.App.1954); *Skatoff v. Solomon,* 244 S.W.2d 590, 593 (Mo.App. 1951).

Applying these general principles to the instant case, we believe the trial court correctly determined Zelma received no consideration. The trial court was free to believe Zelma's testimony that she went to the Bank to pay interest on her deceased husband's note and indicated she would try to sell the skidder. Her evidence was clear she never asked the Bank for permission to retain possession of the skidder or to extend time for payment. Zelma's testimony is buttressed by that quoted of Mr. Combs. Only in response to a leading question from the Bank's attorney did he indicate any "agreement" was made with Zelma. There is no evidence the note was delinquent on January 17, 1989. If that is true, the Bank had no right to repossess the skidder when Zelma signed the note. If delinquent, there is no evidence Zelma requested the Bank to forego its right to repossess. In any event, Zelma was not precluded from attempting to sell the skidder (at least for a period of time) even if the Bank had repossessed it. *See* § 400.9–504, RSMo Supp.

1991. Therefore, Zelma's indication she would try to sell the skidder does not equate with a request for the Bank to forego repossession. Simply stated, Zelma's meeting with Mr. Combs resulted in no agreement obligating the Bank to forego taking any action towards the note or skidder.

The Bank urges that *Globe Indem. Co. v. McDowell,* 159 S.W.2d 822 (Mo.App.1942) controls our decision. There, it was said, "It is not necessary that there be any direct evidence of [an agreement for extension of time], but it is sufficient that an agreement may be inferred." *Id.* at 828. The Bank's reliance on this case is misplaced. To infer the Bank and Zelma agreed upon the Bank's forbearance would require ignoring evidence the trial court was free to believe. The fact that Zelma retained possession of the skidder infers no agreement because she never requested to do so. The evidence shows the Bank had no obligation to allow Zelma to keep the skidder. Point I has no merit.

■ The Bank's remaining point recites:

The court erred in denying appellant's motion under Rule 74.06(B)(2) for relief from final judgment because there was ample evidence presented to the court of the intrinsic fraud of the respondent in presenting to the court fabricated and perjured testimony sufficient for relief under said rule.

Aside from lack of compliance with the "wherein and why" requirements of Rule 84.04(d) and the teachings of *Thummel v. King,* 570 S.W.2d 679, 684–88 (Mo. banc 1978), the point is deficient for an additional reason. The argument portion of the Bank's brief on this point cites no authority whatsoever. Under the points relied on section of the brief, the Bank only cites *May Dept. Stores Co. v. Adworks, Inc.,* 740 S.W.2d 383 (Mo.App.1987). That case was decided November 24, 1987, before Rule 74.06(b)(2) became effective on January 1, 1988. Obviously, the case is irrelevant authority since it could not address the rule upon which the Bank relies. "Whenever irrelevant authority is cited as supporting a point, it is tantamount to a point presented naked of citations, indicating there is no authority for defendants' assertion and constitutes an abandonment of the point." *Cox v. Blackwell,* 661 S.W.2d 831, 832–33 (Mo.App.1983). *See Wright v. Martin,* 674 S.W.2d 238, 242 (Mo.App.1984). Point denied.

Judgment affirmed.

FLANIGAN and PREWITT, JJ., concur.