In the Interest of J.A.M., J.H.L., J.L.L., and J.D.L., Minors.

STATE of Missouri, Respondent,

v.

K—— S——, Appellant.

No. 19419.

Missouri Court of Appeals, Southern District, Division Two.

April 4, 1995.

Motion for Rehearing or Transfer to Supreme Court Denied April 24, 1995.

Application to Transfer Denied May 30, 1995.

James R. Sharp, Wear, Nelms & Sharp, Springfield, for appellant.

Sidney T. Pearson, III, St. James, for respondent.

GARRISON, Presiding Judge.

K___ S___ (Mother) appeals from an order terminating her parental rights to four children: J.A.M., born April 23, 1984; J.H.L., born May 16, 1986;[1] J.L.L., born November 22, 1987; and J.D.L., born January 19, 1989. The order, entered on January 27, 1994, was pursuant to a petition filed by the deputy juvenile officer which alleged that the parents[2] abandoned the children; did not visit or communicate with them or inquire about their welfare from February 5, 1990 to September 10, 1990; and, since February 5, 1990, had continuously failed to provide the children with food, clothing, shelter, or education as defined by law, or other care and control necessary for their physical, mental or emotional health and development. It also alleged that the emotional ties between the children and the natural parents were greatly diminished if they existed at all, and that it was in the best interests of the children for the parental rights to be terminated.

Our review is in accordance with Rule 73.01(c) as interpreted in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). Therefore, the order will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. We are to give due regard to the trial court's opportunity to judge the credibility of the witnesses. *In Interest of M.H.*, 828 S.W.2d 951, 952 (Mo.App.S.D.1992). We are also guided by the principle that in reviewing the evidence we are to view the facts and the reasonable inferences therefrom in the light most favorable to the trial court's order. *Id.* Viewed in that manner, the record indicates the following:

On February 5, 1990, Father and Mother left the children with his brother and sister-in-law (James and Sue) intending to go to California for a job which Father said he had been promised. There was evidence, however, from which the court could have found that the parents decided to leave Missouri because there were pending or expected "bad check" charges; Social Services representatives had visited their home and found human feces and the smell of urine in the house and were perhaps going to start proceedings to remove the children; and they just felt that they wanted to go to California to get a new start on their lives and couldn't take the children with them. There was also testimony that Mother had said that they were not taking the children, even if it meant leaving them with a total stranger.

When the parents left the children with James and Sue on February 5, 1990, they left one clean diaper. Three of the children, however, were wearing dirty diapers at the time. They also left a bag of clothes for the children which were described as being so dirty that they were burned.

There was testimony that James and Sue believed their custody of the children was to be temporary and that the parents would return for them when they got jobs and set up a home. They agreed to keep the children but insisted that the parents sign a power of attorney, the preparation of which they paid for.

The parents did not actually leave for California until sometime between February 5 and February 27, 1990. In the intervening time, Mother saw the children once or twice when James or Sue took them to where the parents were staying. On the Sunday before the parents left, James and Sue "forced the issue" and took the children to see them for several hours. Before leaving, the parents made no arrangements to provide any financial support for the children and left no money for their care.

When the parents reached Gallup, New Mexico, they learned by phone that the job which was supposed to be waiting was in fact not available. They then changed their destination to Phoenix, Arizona, arriving there on March 1. By March 3 both of them had obtained jobs at a cleaning establishment at minimum wage and they obtained a permanent place to live after about three weeks.

---

1. Some of the documents in the legal file show the date of birth for J.H.L. as May 16, 1986, and others show it as May 18, 1986.

2. The natural father was also named as a party to the petition, but he signed a consent to the termination of his parental rights and is not a party to this appeal.

They both eventually obtained higher paying jobs. According to Father, after a few paychecks they would have been able to bring the children to Arizona, but their income, both from legitimate jobs and from the sale of drugs, was spent on their living expenses and to support their own drug habits. Neither of them saw or talked to the children until Mother returned to Missouri on or about September 10, 1990.[3] Likewise, they sent no money for the support of the children or to bring them to Arizona.

James and Sue testified that, while they did not have a phone at their home during that period of time, they received no correspondence from Mother or Father, and the children received no birthday cards or gifts. There was testimony from the parents that they called another relative three times between February and September 1990 to check on the children and let people know where they were, but James and Sue testified that they received no such messages or indications that the calls had been made. In fact, Sue testified that when the power of attorney expired in August, she unsuccessfully made inquiry about the location of the parents. James also testified that the parents knew he worked at Fort Leonard Wood and that while he had not given them a phone number where he could be reached there, they could have gotten that information by calling the Fort. In April 1990, because of behavioral problems they were having with J.A.M. and J.L.L., James and Sue sent J.H.L. and J.D.L. to live with Harold (a brother of Father and James) and his wife Nora in Willard, Missouri. At that time, Nora called the parents to tell them of the change, and she also called them in August when J.A.M. was hospitalized. The parents made no request to speak with any of the children during either of those conversations. Other than those contacts, Harold and Nora received no communications or support of any kind from the parents prior to September 10, 1990.

Mother returned to Missouri around September 10, 1990 and a petition was filed on September 12 seeking to place the children under the jurisdiction of the juvenile division of the circuit court. After a hearing on September 17, the court assumed jurisdiction over J.A.M. and J.L.L. but found that it did not have jurisdiction over J.H.L. or J.D.L. because they were not residing in Texas County. As a result, Mother took J.H.L. and J.D.L. back to Arizona with her. Twelve days later, however, she delivered them to Father, saying that she was not permitted to keep them in her studio apartment. On November 22, 1990, after having been told to do so by Mother, Father returned J.H.L. and J.D.L. to Harold and Nora, who kept them until May 20, 1991, at which time they were returned to Texas County authorities and the court assumed jurisdiction over them.

Mother did not see any of the children from November 1990 until April 1991. In April 1991, she took them for a weekend visit to St. Louis; she visited them for three hours in June 1991; and she brought Christmas gifts to the children in December 1991. She did not visit the children from Christmas 1992 until Christmas 1993, but during that period she called them seven times and wrote twice.

The trial court terminated Mother's parental rights on the basis of abandonment, finding that she had "without good cause, left the children without provision for parental support and without making arrangements to visit or communicate with the children, although able to do so," and that termination was in the children's best interests.

In her first point, Mother contends that the trial court erred in terminating her parental rights on the ground of abandonment "because the trial court, in violation of § 211.477.5 RSMo., failed to state with particularity the factual basis for that finding in that the trial court did not specifically delineate which period mother allegedly abandoned the minor children thus making it impossible for appellant and appellate courts to effectively review the trial court's decision."

---

**3.** In August 1990, Mother and Father separated. They were eventually divorced and at the time of trial, both had remarried.

Section 211.447.2[4] provides the authority for termination in the instant case. It states, in pertinent part:

> The juvenile court may terminate the rights of a parent to a child ... if it finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:
>
> (1) The child has been abandoned. The court shall find that the child has been abandoned if, for a period of six months or longer for a child over one year of age....:
>
> ....
>
> (b) The parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so....

Section 211.477.5 provides:

> Orders of the court issued pursuant to sections 211.442 to 211.487 shall recite the jurisdictional facts, factual findings on the existence of grounds for termination and that the best interests of the child are served by the disposition stated in the order....

■ Mother does not contend in this point that the trial court erred in failing to make a specific finding that there had been an abandonment covering a period of at least six months. Rather, as we interpret it, this point is directed to the failure of the trial court to specify which of the several periods when Mother admittedly had little contact with the children it relied on in finding an abandonment. We address our decision only to those errors alleged in the points relied on. *See Thummel v. King,* 570 S.W.2d 679 (Mo.banc 1978); *In Interest of W.S.M.,* 845 S.W.2d 147, 149, n. 1 (Mo.App.W.D.1993).

In the instant case, Mother does not contend that there was insufficient evidence in the record to support a finding that there had been some period of abandonment of at least six months. In fact, in her second point, she tacitly admits that from February until September 1990 she did not communi-

cate with or provide support for the children. In our discussion of that point which follows, we find that there was sufficient evidence in the record from which the trial court could have found that an abandonment meeting the requirements of § 211.447.2(1)(b) had occurred. Under these circumstances, we are unable to conclude that the trial court committed reversible error in the limited fashion presented by Mother in her first point. The point is, therefore, denied.

In her second point, Mother contends that the trial court's finding of abandonment was not based on substantial evidence and was against the weight of the evidence. She acknowledges that the evidence presented at trial was that she "was not able to communicate or support the children between February and September, 1990." She attributes these failures to the fact that James and Sue did not have a phone and that, because she and the father were forced to work for minimum wage jobs in Arizona, they "could not contribute to their children's support from February, 1990 to September, 1990." She also argues that she should not be considered as having abandoned the children between September 1990 and May 1991, when the court assumed jurisdiction of them, because she claims that she regularly telephoned and corresponded with the children and visited with them for a weekend in April 1991. She also points to the fact that she and Father had the physical custody of two of the children for six weeks during that period.

Our review of this point is subject to the admonition that we are to reverse a judgment on the ground that it is against the weight of the evidence with caution and only if we have the firm belief that the judgment is wrong. *In Interest of W.S.M.,* 845 S.W.2d at 150; *In Interest of D.C.H.,* 835 S.W.2d 533, 534 (Mo.App.S.D.1992). In the instant case, we do not firmly believe that the juvenile court's order was wrong.

■ We are mindful that in a case involving termination of parental rights, the necessity of "substantial evidence" under the *Murphy v. Carron* standard means "clear, cogent, and convincing evidence." *In Inter-*

4. All references to statutes are to RSMo 1994.

*est of M.J.A.,* 826 S.W.2d 890, 897 (Mo.App. S.D.1992). This standard of proof may be met, however, even though there was contrary evidence before the juvenile court. *Id.* Evidence which might have supported a different conclusion does not necessarily demonstrate that the juvenile court's order was against the weight of the evidence. *Id.* This court is to defer to the trial court on questions of credibility and the choice between conflicting evidence. *In Interest of B.A.F.,* 783 S.W.2d 932, 933 (Mo.App.W.D.1989).

■ Under § 211.447.2(1)(b), abandonment of a child over the age of one year occurs when, for a period of six months or more, a parent (1) leaves the child without any provision for parental support, and (2) without making arrangements to visit or communicate with the child, although able to do so. *See In Interest of D__ L__ C__,* 834 S.W.2d 760, 770 (Mo.App.S.D.1992). There was sufficient evidence from which the court could have found that these elements were met in the instant case for a period extending from February 5 to September 10, 1990.

It is true that the evidence indicated that the leaving of the children with James and Sue was initially thought to be temporary. Nevertheless, abandonment may be found from the continuation of what started as a temporary situation, where, as here, a parent continues to show a lack of parental interest and concern for the child. *See In Interest of M.J.A.,* 826 S.W.2d at 897. The fact that each of the parents may have been earning only minimum wages at first would not have kept them from making some effort to assist in the support of their children. *See In Interest of B.A.F.,* 783 S.W.2d at 934. There was evidence from which the court could find an ability to provide "some" financial support, especially in light of evidence that both parents spent money earned at jobs and from selling drugs to support their own drug habits. Additionally, there was evidence from which the court could conclude that Mother made minimal, if any, efforts to communicate with the children during this seven month period. Section 211.447.4 provides that the court "may attach little or no weight to infrequent visitations, communications, or contributions."

Although the factual scenario of what has been a tragic epic for these children extends beyond the period of February 5 to September 10, 1990, we find that the issue presented under this point is determined by the record concerning the events of that time period. The record in the instant case is replete with evidence from which the juvenile court could find that Mother had abandoned the children pursuant to § 211.447.2(1)(b). The fact that she may have later shown increased interest in the children does not alleviate the evidence of abandonment between February 1990 and September 1990 which supports the court's order terminating her parental rights. Mother's second point is denied.

Mother's remaining three points relied on all complain about another portion of the juvenile court's order finding that "the conditions which led to assumption of jurisdiction herein substantially continued and there is little likelihood that those conditions will be remedied at any early date so that the children could be returned to this parent in the near future." This finding apparently referred to an additional ground for termination authorized under § 211.447.2(3). Mother complains that this ground was not alleged in the petition, the trial court failed to state in its order the factual basis upon which it originally assumed jurisdiction of the children, there was no substantial evidence to support this finding, and it was against the weight of the evidence.

We have already determined in our review of the first and second points raised in Mother's brief that the order terminating her parental rights should be affirmed on the basis of abandonment. If any one of the grounds for termination is supported by the evidence, the termination may stand. *In re Interest of F.L.M.,* 839 S.W.2d 367, 370–371 (Mo.App.E.D.1992); *In Interest of D.C.H.,* 835 S.W.2d at 534; *In Interest of R.H.S.,* 737 S.W.2d 227, 236 (Mo.App.W.D.1987). Review of the remaining three points, therefore, would not affect our conclusion that the order terminating Mother's parental rights on the basis of abandonment must be affirmed. Accordingly, those points are moot.

The order terminating Mother's parental rights is affirmed.

CROW and PARRISH, JJ., concur.