Elmer THUMMEL, Plaintiff,

v.

Daryl KING and O. J. Swander, Defendants-Appellants,

W. L. Brady Investments, Inc., Defendant-Respondent,

W. L. Brady, and Robert Lee Barnes and Judy Barnes.

O. J. SWANDER, Appellant,

v.

W. L. BRADY INVESTMENTS, INC., Respondent.

No. 60340.

Supreme Court of Missouri,
En Banc.

Sept. 12, 1978.

Lloyd S. Hellman, Sandler, Balkin, Hellman & Weinstein, Kansas City, for appellants.

Donald G. Stubbs, Stubbs & Mann, Kansas City, for respondent.

FINCH, Judge.

These consolidated cases come before this court on transfer from the Missouri Court of Appeals, Kansas City District. In its written opinion (Turnage, J.), that court affirmed No. 773678 with modification and affirmed No. 772702.[1] In the latter case, the court declined to consider all but two sub-points of appellant Swander's eighty page brief which attempted to raise nine points, one of which contained five sub-points, citing various failures to comply with Rule 84.04.[2] In his application to transfer Swander alleged that such action by the court below was contrary to prior decisions of this court and presented a question of general interest and importance to the bar. We granted transfer in order to clarify what Rule 84.04 requires. We affirm No. 772702 and affirm with modification No. 773678.

We shall decide these cases as though they were here on direct appeal. Art. V, § 10, Mo.Const.; Rule 83.09. However, in the interest of providing the fullest guidance to the bar, we shall refer in the course of our discussion to the court of appeals' disposition of the various points raised in No. 772702.

Inasmuch as the main point to be decided in No. 773678 bears significantly upon No. 772702, it will be helpful to address that appeal first. We adopt without quotation marks portions of the court of appeals' opinion.

In No. 773678 Elmer Thummel brought suit to enforce a mechanic's lien on lot 43, Fairway Hills, in Jackson County, Missouri. Thummel had done brick work in the construction of a fireplace in the house built on such lot and claimed his bill in the amount of $1,126 had not been paid. Thummel named W. L. Brady Investments, Inc. (Brady) and O. J. Swander, among others, as defendants. Swander filed a cross claim for indemnity against Brady, claiming it had guaranteed to Swander it would pay all mechanic's liens.

The court found Thummel was entitled to recover $1,126, plus interest, and declared such amount to be a mechanic's lien on the lot in question. No question is presented as to the propriety of that judgment. However, the court found Swander was not entitled to judgment on his cross claim against Brady because a judgment was not entered against Swander for the amount due Thummel.

On his appeal Swander asserts he should have been given a judgment against Brady because an agreement between them obligated Brady to indemnify Swander against the Thummel judgment and lien. He argues that even though Thummel did not obtain a personal judgment against him, the mechanic's lien resulted in an obligation on his part by reason of his liability on the warranty deed given when he sold the lot.

Swander borrowed $30,200 from Brady as a construction loan to construct a house on lot 43. Swander permitted all of the paperwork to be in his name, even though he claimed he was doing this only as an accommodation for his son-in-law, Daryl King. As a part of the transaction, Swander and Brady entered into a construction loan agreement. It recited it was made in consideration of Brady making a construction loan to Swander and provided generally for the payout of the loan to pay all construction costs. Under this agreement, Brady was to make disbursements for labor performed and materials used in building the house after Swander had approved the bills. The agreement contained a final paragraph which was typed in a printed form as follows:

"11. Borrower agrees to pay 2% construction loan fee and for other services including approval of plans, supervision of construction, periodic inspection, payment of all bills of labor, materials, taxes and insurance guaranteeing against liens, accounting, and for other necessary services during construction and/or the term of this agreement, and the borrower

1. These numbers are the ones assigned in the circuit court. Number 773678 is the Thummel case and number 772702 is the Swander case.

2. All references to rules are to V.A.M.R.

agrees to pay an additional 1% if W. L. Brady Investments, Inc. does not get the end loan."

Also, as a part of the transaction, Swander executed a bond in which he acknowledged himself firmly bound to Brady in the sum of $30,200. The condition of the bond was that Swander would indemnify and hold Brady harmless by reason of any loss which Brady might suffer from the failure of Swander to fully complete the house or by reason of any mechanic's liens or any unpaid labor and material bills.

Swander also executed an affidavit and agreement in which he agreed to hold any party making a loan on lot 43, Fairway Hills, and the title insurance company who issued title insurance on such lot, harmless against any and all liens, claims or suits of any mechanic, laborer, materialman, or supplier, and all liens in connection with the construction of a building on such lot.

The testimony clearly showed that Brady had no funds on hand remaining from this construction loan when Thummel presented his bill for payment. The proceeds of the construction loan had been exhausted by the payment of previous bills for labor and material which had been presented to Brady for payment. Even so, Swander contends in his cross claim that Brady should have paid Thummel because under paragraph 11 of the construction loan agreement Brady guaranteed to pay all liens. In his brief Swander says the language of paragraph 11 is clear and unambiguous and the only function of the court is to enforce Brady's obligation.

■ The position Swander takes totally overlooks the relationship between Swander and Brady and the position they occupy. Brady was making a loan to Swander by which Swander would have the money to construct a house. There is nothing to indicate that Brady undertook to pay any amount for the construction of this house over and above the amount of the loan made to Swander. Although his testimony was equivocal, Swander admitted he would be responsible for all costs in constructing the house in excess of the amount of the loan. He now contends the loan agreement fastens liability on Brady for the Thummel bill without mention of a basis to require Brady to pay more than the loan amount. In the face of Swander's admission and all the other evidence, including Swander's bond and his hold harmless agreement, paragraph 11 could not support a finding that Brady is obligated to pay more than the loan proceeds. Its language does not so require.

■ Swander complains that the trial court made no finding on his cross claim. Such a finding should have been made. However, the evidence does not support a finding in Swander's favor. For that reason the judgment will be modified by adding thereto "judgment in favor of W. L. Brady Investments, Inc., and against O. J. Swander on Swander's cross claim." As modified, the judgment is affirmed.

In No. 772702 Swander brought suit against Brady for an accounting, for an injunction against foreclosure of notes and deeds of trust held by Brady and for other equitable relief. Brady filed an answer and counterclaim and the case was tried without a jury. The judgment was favorable to Brady and Swander appealed.

The accounting made by the court involved the transactions concerning five lots in Fairway Hills subdivision, on all of which houses were constructed pursuant to contractual arrangements between Swander and Brady, the nature of which was described in our discussion of the Thummel suit. Each of the houses was constructed by King on a lot owned by Swander. King only completed one of the houses. The others, only partially constructed when King walked off the job, were finished by another contractor named Morganstern.

King was to and did submit monthly to Brady the bills covering labor and materials on each job. These were on a Request for Payment form which was to be approved and signed by Swander. These bills were then paid by Brady out of funds derived from the construction loans made by Brady on the various lots. It later developed that

some of the signatures of Swander on the Request for Payment forms submitted to Brady were actually written by King or his wife, who was Swander's daughter. Swander contended that Brady was not entitled to credit in the accounting for unauthorized advances to King based on these forgeries.

Swander was the only witness to testify on his behalf in the trial of this case. Several witnesses, including W. L. Brady (defendant's president), King and Morganstern, testified for defendant. There was considerable dispute in the respective versions of what occurred. For example, there was a dispute as to whether Brady furnished accounting reports to Swander as the work progressed. Swander testified he received only one monthly report whereas defendant's evidence was that he was sent regular monthly reports. Another dispute involved whether Swander hired Morganstern to finish the jobs after King walked off or whether he was hired by Brady. Still another dispute concerned what happened when the first two houses were sold. W. L. Brady testified that construction costs on these houses exceeded the amount of the loans available and that he told Swander he would have to come up with the additional money to take care of the overrun. He said that Swander stated he would do so in a few days but meanwhile wanted Brady to release his notes and deeds of trust on these two lots and complete the sales. Brady did that but then Swander did not come up with the additional funds. Consequently, when lots were sold subsequently to the Caldarellos and the Hansons, Brady would not release its deeds of trust and it threatened foreclosure of said deeds of trust if Brady was not paid the balance due it. Swander testified that he did not recall making promises to Brady that he would come up with the additional money required because of overrun on the first two houses sold. As a result of the dispute, the Caldarellos and the Hansons, who contracted to purchase and paid for two lots, have never received deeds to the properties.

The trial court resolved the various factual disputes in the testimony in favor of defendant and against Swander. After

giving credit for all credits found to be due to Swander in connection with the various houses, including net proceeds from the sale of a Swander residence, the court held that Swander was indebted to Brady in the sum $15,575.80, including interest. Judgment for that amount was entered on defendant's counterclaim. The court found against Swander on his petition. Swander appealed.

The court of appeals declined to consider appellant's points relied on Nos. I, II, III and IV for the reason that they "fail to state wherein and why the ruling of the court was erroneous as required by Rule 84.04(d). This fails to preserve any question for review. *Barber v. MFA Milling Co.*, 536 S.W.2d 208 (Mo.App.1976)." As set forth in appellant's brief, points I–IV were:

### I

"The Court Erred in Failing to Enforce a Written Contract of Agency and Guaranty for Which Consideration Was Paid to the Agent. [citations omitted]

### II

"The Court Erred in Failing to Enforce Fiduciary Responsibilities on Defendant Brady Company. [citations omitted]

### III

"The Court Erred in Failing to Require Defendant to Account as Disbursal Agent. [citations omitted]

### IV

"The Court Erred in Failing to Enforce Settlement Agreement of September 20, 1973. [citation omitted]"

Rule 84.04(d) provides in part:

"The points relied on shall state briefly and concisely what actions or rulings of the trial court are sought to be reviewed and wherein and why they are claimed to be erroneous, . . . ."

At the outset it is apparent that the foregoing points do not set forth any

*action* or *ruling* of the trial court. One purpose of the requirement that this be done is the pragmatic consideration that nothing is preserved for review if the question was not properly presented to the trial court in the first instance. The bare allegation that the trial court erred in failing to enforce, require, etc., is plainly inadequate because it does not identify any specific ruling complained of and does not even give any indication of any point in the trial of the case where the trial court was called upon to take such affirmative action. At first glance, it would appear that appellant is asserting that the trial court refused to enforce a contract for some reason. However, it seems from the argument portion of the brief concerning point I that such is not appellant's real complaint. Although the actual thrust of the argument is subject to more than one interpretation, it *appears* that appellant is really disputing the trial court's interpretation of the agreement or, more particularly, paragraph 11 of the agreement. We already have ruled that contention adversely to appellant in No. 773678. The ruling of the trial court in this regard was stated as its conclusion of law number 1 to the effect that Swander was responsible for the payment of all bills. If that was the action of the trial court of which Swander complained, he should have directed his point relied on to that specific ruling.

■ We turn now to the basis upon which the court of appeals rejected points I–IV—*i. e.,* the failure to specify *wherein* and *why* the (unspecified) ruling of the trial court was erroneous. The dual requirements of Rule 84.04(d) that the point relied on state *wherein* and *why* the action or ruling is claimed to be erroneous are apparently the most common source of error in appellate briefing.[3] Actually, compliance with these requirements is a matter of common sense if counsel bear in mind the informational purpose of the brief. After stating the ruling the trial court actually made, it stands to reason that the point should

then specify *why* the ruling was erroneous. This requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends.

The application of these requirements can be illustrated by again referring to appellant's point I. If we assume that the ruling of which appellant complains is the court's interpretation of the paragraph 11, appellant's point I (as supplemented by reference to the argument section of the brief) arguably states the legal reason the action of the trial court was allegedly erroneous (*i. e.,* what appellant contends is the legal effect of paragraph 11) but fails to cite any evidence or testimony upon which appellant relies to give rise to the contended legal effect. To assert, in the form required by Rule 84.04, the point that we have assumed (but are by no means certain) appellant was trying to make, it might have stated:

> The trial court erred in its interpretation of the contract as stated in conclusion of law no. 1 to the effect that Swander was obligated to pay all amounts of labor and materials, including amounts paid on forged requests, over and above the amount of the loan *because* paragraph 11 of the contract constituted a written contract of agency and guaranty, supported by consideration, whereby Brady Co. undertook the responsibility for such payments *in that* it provided that Brady Co. would pay *all* bills for labor and material (not just to the extent of loan proceeds) and would guarantee against all liens on the property.[4]

Point I in appellant's brief is not sufficient to so inform counsel and the court. Points II–IV are similarly deficient.

The foregoing example illustrates the three components of the point relied on

---

**3.** *See* Weier & Fairbank, *Why Write a Defective Brief?*, 33 J.Mo.B. 79, 88–91 (1977).

**4.** *Id.*

mandated by Rule 84.04. The challenged ruling of the trial court is concisely stated, the rule of law (in this case, the contended legal effect of the contract) which it is asserted the court should have applied is set forth and the evidentiary basis upon which it is contended that the asserted rule is applicable is specified.

The requirement that the point relied on clearly state the contention on appeal is not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts. It is rooted in sound policy. Perhaps the most important objective of the requirement relative to the points relied on is the threshold function of giving notice to the party opponent of the precise matters which must be contended with and answered. Absent that, it is difficult, at the very least, for respondent's counsel to properly perform his briefing obligation. This is particularly so in a case such as this where the facts are complex. In addition, such notice is essential to inform the court of the issues presented for resolution. Clear statement of the points relied on facilitates full advocacy and affords the opportunity for clarification by meaningful questions directed to the issues stated in the points relied on. If the appellate court is left to search the argument portion of the brief (or even worse, to search the record on appeal) to determine and clarify the nature of the contentions asserted, much more is at stake than a waste of judicial time (even though in this time of increased litigation and heavy caseloads, that alone is sufficient justification for the rules). The more invidious problem is that the court may interpret the thrust of the contention differently than does the opponent or differently than was intended by the party asserting the contention. If that happens, the appellate process has failed in its primary objective of resolving issues raised and relied on in an appeal.

Failure to properly state the points relied on indicates a lack of understanding of the appellate function and process. Ordinarily, an appellate court sits as a court of review. Its function is not to hear evidence and, based thereon, to make an original determination. Instead, it provides an opportunity to examine asserted error in the trial court which is of such a nature that the complaining party is entitled to a new trial or outright reversal or some modification of the judgment entered. It is not the function of the appellate court to serve as advocate for any party to an appeal. That is the function of counsel. It would be unfair to the parties if it were otherwise. That is the reason for the sometimes expressed unwillingness of an appellate court to assume the role of counsel and advocate for a party on appeal. When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume such a role. In addition to being inherently unfair to the other party to the appeal, it is unfair to parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals.

Appellant's point V provides:

"The Court Erred in Entering Judgment in Favor of Defendant in Reliance Upon Incompetent, Insufficient and Less Weighty Evidence of Extrajudicial Oral Statements and in Effect Reversed the Contractual Obligation Running From Defendant to Plaintiff, Which Was Based Upon Written Contract."

This point was rejected by the court of appeals for failure to specify what evidence is claimed to be incompetent and less weighty. However, this is by no means the only error. Point V plainly does not state wherein and why the trial court erred. Even considering the entire argument following this point, we do not find a single reference to any portion of the transcript which indicates that the trial court relied on

or even considered the oral statements referred to in reaching its determination. The argument portion of the brief which follows point V, aside from reasserting appellant's contentions regarding the proper construction of paragraph 11, discusses hearsay, the statute of frauds, what constitutes an affirmative defense, the burden of proof, consideration, abuse of fiduciary duty, business duress, and the weight of a written contract compared with an oral agreement. Point V is plainly deficient.

■ The court of appeals declined to consider points VI A, VI B, VI D, VII, VIII(1) and IX for the reason that they "fail to cite any authority in support thereof and are thus deemed to be abandoned," citing *Cady v. Kansas City Southern Railway,* 512 S.W.2d 882 (Mo.App.1974) and Rule 84.04(d). We reject an interpretation of Rule 84.04(d) which states categorically that appellate courts will not give further consideration to points which are not followed by citation of authority.

Rule 84.04(a) sets forth four requirements for the appellant's brief. These are (1) a jurisdictional statement, (2) a statement of facts, (3) the points relied on, and (4) argument. Rule 84.04(d) sets forth the requirements for points relied on. It requires that the point state briefly the actions or rulings of the court for which review is sought and wherein and why they are claimed to be erroneous, "with citations of authorities thereunder. If more than three authorities are cited in support of a point made, the three authorities principally relied on shall be cited first. All authorities discussed in the argument shall be cited under the 'Points Relied On.' Long lists of citations should not be included." The foregoing language does not address the question of whether authority must be cited. Rather, it provides where and how citation of authority, *if any,* is to be set forth in the brief.

If the effect of Rule 84.04(d) was as stated by the court of appeals, the law would become static. New propositions—questions of first impression—would fail to be considered for lack of authority to support their adoption. Changes in existing rules might well fail for the same reason. Moreover, many questions arising on appeal involve interpretation of private agreements, wills, statutes, etc., which have not been interpreted in reported cases. In these situations, the central question is the meaning to be derived from the language used and the most persuasive argument may be an analysis of the words used and a practical discussion of the effect of the various possible constructions. All such questions should be considered, even though not supported by citations to previously decided cases. Rule 84.04(d) is not intended to provide otherwise.

■ In holding that Rule 84 does not *require* citation of authority in every instance, we emphasize that we do not thereby intend to modify the appellant's burden on appeal of demonstrating error by the court below. Thus, if the point advanced is not a matter of first impression and is not simply a matter of logic or policy or analysis of statutory or documentary language, as would be the case in the type of matters indicated above, the court on appeal need not search for precedential support to overrule the contention. If the point is one for which precedent is appropriate and available, it is the obligation of appellant to cite it if he expects to prevail. We suggest that if the point is one for which it is believed that precedent for or against it is unavailable, counsel would be well advised to specifically so state under the point in question, explaining why citations are unavailable.

In reviewing the points not considered by the court of appeals for failure to cite authority, we have concluded that points VI A, VI B, VII and IX do not comply with the rules in other material respects. Points VI A, VI B and VII do not indicate wherein and why the trial court's action is claimed to be erroneous. However, we believe no purpose would be served in further lengthening this opinion by quoting each point and pointing out the flaws therein. Sufficient guidance in this regard already has been provided by our previous discussion of these requirements. Point IX merely says that the court erred in failing to advise the

plaintiff that the judge of the court was previously acquainted with defendant's president. There is nothing as to why that was prejudicial and the three sentences of argument concerning the point add nothing thereto. It did not comply with Rule 84.04.

The court of appeals declined to consider points VIII(1) and VIII(2) on two different grounds. Point VIII(1) was rejected for failure to cite authority and point VIII(2) for failure to specify the issues of fact and conclusions of law which the court failed to find. Appellant's point VIII provides:

## VIII

"The Court Erred in Failing to Make Necessary and Proper Findings of Fact on Principal Controverted Fact Issues

and

The Court Erred in Failing to Find Issues of Fact and Conclusions of Law Consistent With the Greater Weight of the Evidence and Non-Controverted Evidence *Rule 73.01(b), V.A.M.R. Clauson v. Tipton,* 147 S.W.2d 148, 150 *(K.C.A.1941)"*

As appellant urged in his application to transfer this case, the court of appeals and not appellant subdivided point VIII into (1) and (2). The argument for both parts of the point is combined and the cited authority is plainly intended as support for both points. Thus, point "VIII(1)" should not have been rejected for lack of authority.

Obviously, the failure to specify the issues of fact and conclusions of law is common to both parts of point VIII. Appellant contended in his application to transfer that the court of appeals was overly technical in rejecting point VIII on this basis because his proposed findings of fact numbers 11–43 were set forth verbatim in the argument portion of his brief. It is apparent from this assertion that appellant misperceives the problem because point VIII would not be cured even if the proposed findings of fact were set forth verbatim in the point relied on itself.

■ One fundamental error in appellant's approach in point VIII is the attempt to shotgun refusal of all of the proposed findings into one point or one allegation of error. Examination of proposed findings 11 through 43 discloses that they do not relate to a single issue. Instead, they relate to numerous issues. If appellant had selected the finding or findings pertaining to one issue and then stated in a point relied on that specified evidence required a finding of a particular fact or facts and that certain numbered proposed findings of fact properly stated the finding the court should have made thereon and that failure to make said findings was error because (then stating the reasons), there would have been compliance with the rule. Similar points should be stated for each of the issues in the case on which appellant believes the court should have given particular proposed findings of fact, including therein wherein and why failure to make the finding was erroneous.

■ Appellant concedes in the argument following point VIII that the trial court did make findings of fact and conclusions of law and that specific findings are required only on issues which are material to the lawsuit and necessary to the judgment but there is no indication in the point relied on or the argument portion pertinent thereto stating wherein and why any of the 23 proposed findings are material to any issue in the suit or that the findings of fact made thereon by the court were insufficient. Thus, we are left to search the record to determine the controverted issues, the materiality of the issues and the evidentiary support for the proposed findings. This we decline to do.

Although points VI C, VI D and VI E lack technical compliance with the letter of Rule 84, the court of appeals found points VI C and VI E in sufficient compliance to merit consideration. We believe point VI D also was sufficient to justify a review on the merits in this opinion. We consider all three.

Appellant alleges in point VI C that the trial court erred in allowing credit for certain payouts made on the basis of Request for Payment forms on which Swander's signature had been forged by his son-in-law,

King. As previously noted, under the loan agreement between Swander and Brady, requests for payment from the construction loan proceeds held by Brady were to be made on requests signed by Swander. Brady was to verify that the material or labor claimed in such request had actually been used in the house involved and thereafter make payment. Brady and one of his employees both testified they mailed monthly statements to Swander showing all amounts paid. The procedure called for Swander to return one of the copies of this monthly statement to Brady with his signature. Brady and his employee both testified Swander returned the first monthly statement, but thereafter failed to return any statements even though such statements continued to be mailed monthly.

Swander stated he did not receive all of these statements. The court found in an informal statement made to counsel near the conclusion of the hearing that Swander either knew King was signing Swander's name to requests for payments or that Swander had good reason to believe this was happening. There is substantial evidence to support the court's finding. Swander knew houses were being constructed and knew the proceeds of the construction loan had to be paid out to pay for the continued construction. Swander also knew King was actually in charge of the construction so it is apparent that Swander knew, or should have known, that someone was making the proper requests to Brady for payment to be made for labor and material going into the houses. It is apparent the most likely person who would be responsible for this was King. In spite of all of this knowledge, Swander made no complaint to anyone, nor did he make any investigation to determine the status of the payout of the construction loan. In *Newport v. Hedges,* 358 S.W.2d 441, 447 (Mo. App.1962), the court stated:

> "And one may approve, acquiesce, affirm, accept, alter, or abandon in express words, or such may be implied from the conduct of the parties."

■ In this case the court's finding that Swander approved the payouts, at least by his conduct, is supported by substantial evidence and we do not disturb it. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

Next, appellant contends in point VI D that the trial court erred in allowing defendant credit for overcharges improperly made for which there was no evidentiary support. A table in appellant's brief sets forth five amounts under the heading of "overcharges claimed" but we are not cited to any evidence from which we can determine whether these amounts were improperly allowed or even where the figures came from. The only figure therein for which appellant gives an explanation as to why the amount is claimed to have been erroneously allowed is $163.80. Appellant urges that credit for this amount should not have been allowed because it represents the cost of publication of notice of foreclosure which appellant asserts was wrongfully commenced. The trial court expressly found that the note was in default and that defendant was entitled to proceed with foreclosure. So far as we can determine, this finding is supported by substantial evidence. Appellant cites no evidence to the contrary. The point is overruled.

■ Finally, in point VI E, the appellant alleges the court erred in allowing interest to Brady on the construction loans after Brady should have satisfied them with funds in its hands. Swander's argument appears to be that at the time suit was filed Brady had sufficient funds on hand to satisfy Swander's construction loan on both lots. He says that other bills for which Brady claimed a right to reimbursement by Swander arose from failure of Brady to pay obligations imposed by paragraph 11 of the contract.

We have previously disposed of Swander's contention regarding paragraph 11. Although Brady did have other funds belonging to Swander at the time of closing, these funds were not sufficient to pay the outstanding expenses on all the lots. In reliance on Swander's promise that the entirety of these additional amounts expended

would be forthcoming, two of the lots held as security and been released and the sales closed. Brady made no agreement and was under no obligation to apply the funds it held first to lots 31 and 37, thereby further relinquishing its security, before it received the full amounts due from the other lots. Inasmuch as the funds held by Brady were not sufficient to satisfy both the amounts due from the other transactions and the amounts due on lots 31 and 37 and no allocation to such loans was required, we hold that the trial court properly held the notes to be in default and did not err in allowing interest thereon.

The final disposition of an appeal based on a failure to comply with the appellate briefing rules has long been a matter of great concern in this court. On numerous occasions we have expressed our reluctance to punish innocent parties for the shortcomings of counsel on appeal. As we have often declared, it is the policy of this court to decide cases on the merits whenever possible. We note that the St. Louis District of the Court of Appeals has initiated a program whereby briefs are screened promptly by its research attorneys and, if found not to comply with Rule 84, are returned to the attorneys for rebriefing prior to argument and submission. Although this commendable practice by no means establishes a right to such treatment, we believe this procedure is highly beneficial and should be employed whenever possible. This court is now in the process of establishing its own staff of research attorneys and will adopt a similar policy. Of course, counsel may still raise deficiencies found in an opponent's brief as an aid to framing the issues to be resolved.

Unfortunately, the circumstances of the instant case do not justify another opportunity for rebriefing. As previously indicated, the court of appeals declined to address all but two of appellant's contentions on appeal in a written opinion which specified the reason therefor, including the specific deficiencies found to exist in appellant's brief. Appellant moved for rehearing or transfer in the court of appeals and for transfer in this court contending that his brief was not so deficient as to warrant dismissal. This court ordered the case transferred. Yet, despite the fact that this court may decide cases accepted for transfer "the same as on original appeal," Rule 83.09, and despite the fact that Rule 83.08 expressly provides for the opportunity to file an additional brief in which the defects noted by the court of appeals could have been cured, no new brief was filed by appellant in this court.

We must bear in mind that appellant is not the only innocent party whose interests are to be considered. This action was filed nearly five years ago. It was tried in April 1974 and judgment was entered in January 1976. Much of the delay on appeal is attributable to the fact that the case was transferred after opinion in the court of appeals, thereby necessitating argument and submission a second time. Of course, as indicated above, had appellant utilized the opportunity afforded by the rules to file an additional brief, defendant would have suffered only the delay of the additional submission to this court. At some point, defendant's interest in an end to this litigation must be recognized. Moreover, as counsel for appellant strenuously urged on appeal, one purpose of this suit was to clear away the dispute between Swander and Brady so that two totally innocent third parties, the Caldarellos and the Hansons, who purchased lots 31 and 37 more than five years ago, could finally obtain their warranty deeds. The delay of rebriefing and another submission unquestionably would be prejudicial to their interests.

As previously indicated, the judgment in No. 773678 is affirmed as modified. The judgment in No. 772702 is affirmed.

MORGAN, C. J., BARDGETT, DONNELLY, RENDLEN and SEILER, JJ., and HOUSER, Special Judge, concur.

SIMEONE, J., not participating because not a member of the court when cause was submitted.