

# *In the*
# *Missouri Court of Appeals*
## *Western District*

| | | |
|---|---|---|
| IN THE MATTER OF THE JAMES A. LONG TRUST DATED DECEMBER 13, 2007 AS AMENDED. | ) ) ) ) ) | |
| SHARON LONG, SUCCESSOR TRUSTEE, | ) ) ) | |
| Respondent, | ) ) | **WD86738 consolidated with WD86759** |
| V. | ) ) ) | **OPINION FILED: DECEMBER 17, 2024** |
| KEVIN LONG, ET AL., | ) ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Mark Styles, Jr., Judge

Before Division One: Lisa White Hardwick, Presiding Judge, Gary D. Witt, Judge and
Janet Sutton, Judge

Kevin Long, Keagan Long, Logan Long, Tammy Rollins, Kelsey Rollins, and

Klare Rollins (collectively "the Appellants") appeal from the trial court's amended

judgment, which terminated the Appellants' rights as beneficiaries of a trust due to the

Appellants' violation of the trust's no-contest clause. Because material deficiencies in the

Appellants' brief prevent us from conducting meaningful appellate review of the amended

judgment, the Appellants' appeal is dismissed.

## Factual and Procedural Background

Sharon Long ("Long") and James Long were husband and wife. James Long was the father of Kevin Long and Tammy Rollins, and the grandfather of Keagan Long, Logan Long, Kelsey Rollins, and Klare Rollins.[1] On December 13, 2007, James Long established the James A. Long Trust ("Trust") which he later amended twice. He was the settlor and the trustee of the trust. Following his death on May 29, 2021, Long became the successor trustee of the Trust. On July 26, 2022, Long, as the successor trustee for, and a lifetime beneficiary of, the Trust filed a petition for declaratory judgment and for modification of alternate trustee appointments ("Trustee Petition") in the circuit court of Jackson County ("trial court").[2] The Trustee Petition set forth three counts: (1) a request for the trial court to declare that Long, acting in her capacity as the acting successor trustee, has the authority to sell the real property held by the Trust and assess damages against Kevin Long for interfering with the sale of the real estate; (2) a request for the trial court to declare the applicability of the amendments to the Trust; and (3) a request for an order to modify the Trust to appoint a suitable trust company willing to administer

---

[1]The Appellants' brief asserts that Long was James Long's "second wife who did not even attend his own funeral," but fails to provide a citation to the record on appeal where this fact is established. While the record does not indicate whether or not Long is the mother of Kevin Long and Tammy Rollins and, thus, the grandmother of Keagan Long, Logan Long, Kelsey Rollins, and Clare Rollins, the pleadings consistently refer to Kevin Long and Tammy Rollins as the children of James Long but otherwise do not establish Long's status as anything but James Long's wife.

[2]Throughout their brief, the Appellants refer to the trial court as the "district court." This is properly referred to as the "circuit court."

All statutory references are to RSMo 2016 as supplemented through July 26, 2022, unless otherwise indicated.

a small trust to serve as trustee. The Trustee Petition named as defendants each of the Appellants, whom the Trust named as beneficiaries or contingent beneficiaries of any assets remaining at the time of Long's death or remarriage.

The Appellants filed an answer and counterpetition ("Counterpetition") on September 1, 2022. The Counterpetition set forth three claims against Long: (1) remove Long as the acting successor trustee "on the grounds of committing a serious breach of trust; persistent failure of the trustee to administer the trust effectively; breach of fiduciary duty; misappropriation of trust funds; and failure to inform and report" ("Counterpetition Count I"); (2) remove Long as a lifetime beneficiary of the Trust on the grounds that she violated the Trust's no-contest clause because she filed the Trust Petition "to obtain an adjudication and contest or otherwise object to the clear terms of the Trust and the amendments to the Trust regarding the distribution of assets and the appointment of trustees" ("Counterpetition Count II"); and (3) find that Long, in her role as the acting successor trustee, breached her fiduciary duty to the Appellants ("Counterpetition Count III").[3]

On September 21, 2022, Long filed an answer to the Counterpetition ("Answer to the Counterpetition"). In addition to denying that the Appellants were entitled to relief under the three counts set forth in the Counterpetition, the Answer to the Counterpetition set forth the following affirmative defenses: (1) the Appellants had waived the claims set

---

[3]The Appellants refer to the counts in their Counterpetition as "Counter-Petition I," "Counter-Petition II," and "Counter-Petition III." This phrasing is confusing as it implies that the Appellants filed three separate counterpetitions when, in fact, they only filed a single Counterpetition asserting three counts.

forth in the Counterpetition; (2) the Appellants were estopped from raising the claims asserted in the Counterpetition; (3) none of the Appellants' claims were asserted within the one-year statute of limitations; and (4) Counterpetition Count II triggers the Trust's no-contest clause because it seeks to "nullify the provisions of [the Trust] that create a marital share" to benefit Long during her lifetime.

The next day, September 22, 2022, Long filed a petition against the Appellants pursuant to section 456.4-420[4] seeking a determination of whether Counterpetition Count II violated the Trust's no-contest clause ("Long's Safe Harbor Petition"). Consistent with the affirmative defense asserted in her Answer to the Counterpetition, Long's Safe Harbor Petition asserted that, in seeking to remove Long as the lifetime beneficiary of the Trust, Counterpetition Count II constituted an attempt to void and nullify the provision of the Trust that created a "marital trust" for Long's benefit. Long's Safe Harbor Petition asked the trial court to make an interlocutory determination regarding Counterpetition Count II before proceeding further.

Over the next eight months, Long and the Appellants engaged in substantial discovery and motion practice. Relevant to this appeal, Long requested that the trial court set a hearing on Long's Safe Harbor Petition. On May 3, 2023, the trial court

---

[4]Section 456.4-420 allows a party interested in a trust instrument to seek a determination of whether a particular petition, claim, or motion would trigger application of the trust instrument's no-contest clause without actually triggering the no-contest clause. In other words, the statute creates a so-called "safe harbor" for interested parties to obtain a determination of the applicability of a no-contest clause to a particular claim or cause of action that they wish to bring in court regarding a trust instrument.

conducted a case management conference. Following the case management conference, the trial court entered an order setting a hearing for July 14, 2023, to determine whether Long's Trustee Petition violates the Trust's no-contest clause as alleged in Appellants' Counterpetition Count II, and whether Appellants' Counterpetition Count II violates the Trust's no-contest clause as alleged in Long's affirmative defense and Safe Harbor Petition.

On July 3, 2023, eleven days before the scheduled hearing, more than ten months after filing the Counterpetition, and without first seeking leave from the trial court to do so, the Appellants filed a petition seeking a section 456.4-420 determination whether Counterpetition Counts I, II, or III violate the Trust's no-contest clause ("Appellants' Safe Harbor Petition"). Long filed a trial brief on July 13, 2023, and asserted that the Appellants' Safe Harbor Petition was not timely filed, nor effective as a matter of law to potentially afford Appellants a safe harbor, because it was filed *after* the Appellants had already filed their Counterpetition, and thus after the Appellants had violated the Trust's no-contest clause.[5]

During the July 14, 2023 hearing, Long and the Appellants offered argument regarding: (1) whether Long violated the Trust's no-contest clause when she filed the Trustee Petition as alleged in Appellants' Counterpetition Count II; and (2) whether Appellants' Counterpetition Count II violated the Trust's no-contest clause by seeking to

_____

[5]Section 456.4-420.2 permits the filing of a petition to determine whether the assertion of a claim for relief by an interested person *would* trigger application of a no-contest clause, and contemplates that the petition can be filed either as a separate judicial proceeding, or with other claims for relief in a single judicial proceeding.

5

negate Long's marital trust interest as alleged as an affirmative defense in Long's Answer to the Counterpetition and as alleged in Long's Safe Harbor Petition. At the conclusion of the hearing, the trial court took the matter under advisement.

The trial court initially entered a judgment on November 3, 2023, but then filed an amended judgment on November 6, 2023 ("Amended Judgment"). After examining the no-contest clause of the Trust and the pleadings filed by Long and the Appellants, the trial court made the following findings in its Amended Judgment: (1) Long's filing of the Trustee Petition did not violate the Trust's no-contest clause; (2) the Appellants violated the Trust's no-contest clause by seeking the immediate removal of Long as the acting successor trustee in Counterpetition Count I and the immediate removal of Long as a beneficiary in Counterpetition Count II; and (3) the Appellants' Safe Harbor Petition was not timely filed because it was filed after the trial court had set the parties' no-contest clause disputes for hearing without first seeking leave of court. Based on these findings, the Amended Judgment ordered that that the Appellants' status as beneficiaries be terminated and that the pleadings of the Appellants be denied or stricken because the Appellants no longer have standing to challenge the Trustee Petition.

The Appellants appeal.[6]

---

[6]Section 456.4-420.3 permits an interlocutory appeal from an interlocutory determination of the applicability of a trust's no-contest clause. The Appellants filed a notice of appeal after the trial court entered its initial judgment, and then a second notice of appeal following entry of the Amended Judgment. The appeals have been consolidated.

6

## The Appellants' Compliance with Rule 84.04

As an initial matter, Long argues that Appellants' brief substantially fails to meet the requirements of Rule 84.04[7] so that the Appellants' brief preserves nothing for appellate review, requiring dismissal of this appeal.

Rule 84.04 sets forth the requisite contents for all briefs filed in Missouri appellate courts, and the requirements set forth therein are mandatory. *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022). Rule 84.04 requires briefs to include: (1) a table of contents; (2) a table of authorities; (3) a jurisdictional statement; (4) a statement of facts; (5) points relied on; (6) argument supporting each of the points relied on; and (7) a conclusion setting forth the precise relief sought. Rule 84.04(a)-(e). "The failure to substantially comply with Rule 84.04's requirements preserves nothing for our review and is grounds for dismissing the appeal." *R.M. v. King*, 671 S.W.3d 394, 397 (Mo. App. W.D. 2023). While we prefer to reach the merits of an appeal, we "will not consider a brief 'so deficient that it fails to give notice to this Court and to the other parties as to the issue presented on appeal.'" *Lexow*, 643 S.W.3d at 505 (quoting *J.A.D. v. F.J.D.*, 978 S.W.2d 336, 338 (Mo. banc 1998)).

> When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, [we are] left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency.

---

[7]All Rule references are to *Missouri Court Rules, Volume 1 -- State, 2024* unless otherwise noted.

*Id.* (quoting *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978)).  A court inhabiting such a role is unfair to the opposing party because the court begins acting as an advocate, not a neutral arbiter.  *Id.*

The Appellants' initial brief was struck by this Court on February 21, 2024, for failure to comply with Rule 84.04 in four significant respects: (1) the statement of facts failed to include specific page references to the record on appeal as required by Rule 84.04(c); (2) the points relied on were not in compliance with Rule 84.04(d); (3) each point relied on failed to include a list of authorities on which the Appellants relied as required by Rule 84.04(d)(5); and (4) the argument failed to include a preservation statement and page references to the record on appeal, both of which are required by Rule 84.04(e).[8]

The Appellants filed an amended brief on March 5, 2024.  For the reasons explained below, the amended brief remains materially noncompliant with Rule 84.04. The briefing deficiencies are not mere technicalities, but substantially impede appellate review because they deprive this Court and Long of fair notice about the issues presented for appellate review, and would require this Court to step into the role of advocate by speculating about the scope and nature of the Appellants' claims.  We find the

_____

[8]Appellants initial brief was struck for significant briefing deficiencies and violations of Rule 84.04.  The Court's staff counsel provided a written notice to Appellants as to the reasons that the brief was struck.  Appellants filed an amended brief, but failed to remedy most of the deficiencies and rule violations outlined in the correspondence from our staff counsel.  Appellants' amended brief remains in material noncompliance with Rule 84.04.

deficiencies associated with the Appellants' statement of facts, points relied on, and the argument developing each point relied on require dismissal of this appeal.

## *Deficiencies in Statement of Facts*

Rule 84.04(c) requires every appellant's brief to include "a fair and concise statement of the facts relevant to the questions presented for determination without argument" along with "specific page references to the relevant portion of the record on appeal." "The primary purpose of the statement of facts is to afford an immediate, accurate, complete and unbiased understanding of the facts of the case." *In Matter of Marvin*, 682 S.W.3d 788, 795 (Mo. App. W.D. 2023) (quoting *Acton v. Rahn*, 611 S.W.3d 897, 901 (Mo. App. W.D. 2020)). "Facts that 'are aimed primarily at restating [appellant's] version of events and arguing, based on [appellant's] version of events, that the trial court erred' are insufficient" and do not comply with Rule 84.04(c). *Pickett v. Bostwick*, 667 S.W.3d 653, 659 (Mo. App. W.D. 2023) (quoting *Wallace v. Frazier*, 546 S.W.3d 624, 626-27 (Mo. App. W.D. 2018)). "Citations for each factual statement are mandatory and essential for the effective functioning of appellate courts, which cannot spend time searching the record to determine if factual assertions stated in the brief are supported by the record." *Republic Fin., LLC v. Ray*, ED 112283, 2024 WL 4271288 (Mo. App. E.D. Sept. 24, 2024)(internal quotation marks omitted). The failure to provide a fair and concise statement of facts with references to the record on appeal preserves nothing for review and is a sufficient basis to dismiss an appeal. *In Matter of Marvin*, 682 S.W.3d at 795-96.

The Amended Judgment determined the applicability of the Trust's no-contest clause to Long's Trustee Petition and to the Appellants' Counterpetition. The Appellants' Amended Brief asserts eight points on appeal, each purporting to address the trial court's no-contest clause determinations on either procedural or substantive grounds. The Appellants' statement of facts is not confined, however, to facts relevant to the questions presented for determination. Instead, the Appellants devote a considerable portion of the statement of facts addressing Long's alleged misconduct as the Trust's acting successor trustee, facts that are both argumentative and irrelevant to the disposition of their appeal. Moreover, most of the statements of fact do not include citation to the relevant portion of the record on appeal including as an example, an unsubstantiated and irrelevant statement regarding the "Zillow" estimate of the value of the real estate. The Appellants' violations of Rule 84.04(c) are material.

### *Deficiencies in Points on Appeal and Argument*

Rule 84.04(d) requires an appellant's brief to include points relied on. Rule 84.04(d)(1) sets forth the requisite contents of a point relied on in an appeal from a trial court decision:

> Where the appellate court reviews the decision of a trial court, each point shall:
>
> (A) Identify the trial court ruling or action that the appellant challenges;
>
> (B) State concisely the legal reasons for the appellant's claim of reversible error; and
>
> (C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

10

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

Immediately following the point relied on, the party **must** "include a list of cases, not to exceed four, and the constitutional, statutory, and regulatory provisions or other authority upon which [the point relied on] principally relies."   Rule 84.04(d)(5).

The requirements of Rule 84.04(d) are "not simply a judicial word game or a matter of hypertechnicality on the part of appellate courts," and are instead "rooted in sound policy." *Thummel*, 570 S.W.2d at 686.  The requirements set forth for points relied on in Rule 84.04(d) are designed "to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review." *Lexow*, 643 S.W.3d at 505 (quoting *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997)).  The requirements of Rule 84.04(d) are intended to relieve the Court and the opposing party from being required "to search the argument portion of the brief (or even worse, to search the record on appeal) to determine and clarify the nature of the contentions asserted," which constitutes a waste of judicial resources and risks "that the court may interpret the thrust of the contention differently than does the opponent or differently than was intended by the party asserting the contention." *Thummel*, 570 S.W.2d at 686.  As such, "[a] point relied on written contrary to the mandatory requirements of Rule 84.04(d), which cannot be comprehended without resorting to other portions of the brief, preserves nothing for appellate review." *Storey v.*

11

*State*, 175 S.W.3d 116, 126 (Mo. banc 2005) (quoting *State v. Dodd*, 10 S.W.3d 546, 556 (Mo. App. W.D. 1999)).

Following each point relied on, an appellant is required by Rule 84.04(e) to include an argument developing the point on appeal. Without "develop[ment of] an argument by demonstrating how the principles of law and the facts of the present case interact to support [their] assertion that the [trial] court committed reversible error," an appellant will have failed to satisfy the fundamental purpose of an appellate brief: to supply and explain the legal basis supporting the claim of trial court error that necessitates reversal. *In Matter of Marvin*, 682 S.W.3d at 798 (quoting *Murphree v. Lakeshore Ests., LLC*, 636 S.W.3d 622, 625 (Mo. App. E.D. 2021)). Rule 84.04(e) requires the argument portion of a brief to be limited to those errors included in the points relied on.

The argument portion of an appellant's brief must set forth the applicable standard of review. Rule 84.04(e). Rule 84.04(e) "anticipates and requires reliance upon the applicable standard of review in its application" so that "the construction of an appellant's brief in compliance with Rule 84.04 is necessarily dependent upon and interwoven with that standard of review." *In Interest of R.R.S.*, 573 S.W.3d 717, 731 (Mo. App. S.D. 2019). Finally, all factual assertions in the argument portion of an appellant's brief "shall have specific page references to the relevant portion of the record on appeal." Rule 84.04(e).

The Appellants' points relied on and the argument following each point are in material noncompliance with the aforesaid requirements, preserving nothing for our

12

review.  For ease of analysis we address certain of the Appellants' points on appeal

collectively, and out of order.

## *Points One, Two, and Three*

The Appellants' first three points on appeal each purport to challenge the trial

court's conclusion that the Appellants' Safe Harbor Petition was not timely filed.  The

Appellants' first point relied on states:

> The [trial] court erred in its Amended Judgment ruling the [Appellants' Safe
> Harbor Petition] was untimely.  The [trial] court erred because the
> [Appellant's Safe Harbor Petition] was filed prior to the hearing of oral
> arguments on the issues and the [trial] court arbitrarily impose[d] a "leave
> of court" requirement on [the] Appellants that was not imposed on [Long]
> when she filed [Long's Safe Harbor Petition].

While the point relied on identifies the trial court's ruling or action that the Appellants

challenge, it fails to state the legal reasons why the action constitutes reversible error and

fails to explain why, in the context of this particular case, those legal reasons support the

Appellants' claim of reversible error.  In other words, the first point relied on fails to

illuminate the "wherein and why" of trial court error, as required by Rule 84.04(d).  *See*

*Storey*, 175 S.W.3d at 126.

The deficiencies in the point would require us to improvidently resort to the

argument to determine and clarify the nature of the contentions asserted.   Here, even that

step would do little to permit comprehension of Appellants' claim of error.  The two-page

argument meant to develop point one on appeal is a rambling indictment of the trial

court's determination that the Appellants' Safe Harbor Petition was untimely filed, filled

with conclusory statements without any citation to legal authority, or any explanation of

13

the absence of such authority. The "[f]ailure to cite relevant authority supporting the point or to explain the failure to do so preserves nothing for review." *Kelly v. Fitzpatrick*, 677 S.W.3d 622, 634 (Mo. App. W.D. 2023) (quoting *E.K.H.-G. v. R.C.*, 613 S.W.3d 449, 453 (Mo. App. E.D. 2020)).

In addition, in the summary listing of their points relied on, the Appellants cite Rule 2-2.2(B) as the only supporting authority for their first point on appeal. Rule 2-2.2(B) is a provision of the Code of Judicial Conduct that allows a judge to "make reasonable efforts, consistent with the law and court rules, to facilitate all litigants, including self-represented litigants, being fairly heard." It is unclear how this provision of the Code of Judicial Conduct has any legal bearing on Appellants' first point on appeal, particularly as neither the Rule nor its relevance is developed in any way in the argument.

The standard of review under this point simply states that it is for abuse of discretion, without citation to any authority or any attempt to explain why that is the appropriate standard of review for this point relied on. In its limited attempt to explain how this point was preserved for appeal, there is a blanket citation to the Respondent's petition and a citation to the transcript of the hearing without any attempt to explain how this preserved the issue for our review.

The Appellants' second point relied on and the argument that purports to develop the point are collectively one-half page in length. The point on appeal states:

> The [trial] court's failure to rule on [the Appellants' Safe Harbor Petition] was prejudicial to [the] Appellants because the court did not rule on the petition until the Amended Judgment was rendered on November 6, 2023.

14

The point fails to identify any trial court error, and merely complains about the effect of purported trial court error. The argument portion of the brief following this point is equally deficient. The Appellants argue in the entirety:

> The Appellants were prejudiced by the [trial] [c]ourt's failure to rule on the Appellants' [Safe Harbor Petition] made eleven days prior to the hearing date. In fact, the [trial] [c]ourt did not rule on [the Appellants' Safe Harbor Petition] until November 3, 2023, four months after the Appellants' [Safe Harbor Petition] was filed on July 3, 2023. The failure of the [trial] [c]ourt to rule on [the Appellants' Safe Harbor Petition] either prior to or at the time of the hearing created a prejudicial lack of clarity and confusion over the potential consequences of the hearing to the detriment of the Appellants.

The argument, as with the point relied on, identifies no trial court error, and instead complains only of the alleged prejudice of the trial court's ruling, and even then, in summary fashion without any citation to legal authority, or any explanation of the absence of such authority, preserving nothing for our review. *Kelly*, 677 S.W.3d at 634.

In addition, in the summary listing of their points relied on, the Appellants cite Rule 2-2.2(B) and Rule 55.26(a) and as the only supporting authority for their second point on appeal. Neither authority is even mentioned in the argument portion of the brief, let alone developed in the argument, rendering purported reliance on the authorities meaningless.

The Appellants' third point relied on states in its entirety: "The [trial] court erred in denying protection under [section] 456.4-420 because [Long's Petition for Safe Harbor] included [the] Appellants' Counterpetition [Count] II." The point relied on is confusing, and fails to set forth "wherein and why" the trial court erred, preserving nothing for appellate review. *See Storey*, 175 S.W.3d at 126.

15

The argument following the Appellants' third point relied on clarifies that the Appellants believe they were not required to file their own Safe Harbor Petition because Long's Safe Harbor Petition sought a determination about whether Counterpetition Count II violated the no-contest clause, rendering Appellants' Safe Harbor Petition superfluous. Clarification of a point relied on in the argument following the point is not sufficient to preserve an issue for appeal. *See Thummel*, 570 S.W.2d at 686 (recognizing that, if a point relied on is defective in that it fails to set forth the "wherein and why" of trial court error, the point remains defective even if the argument portion of the brief determines and clarifies the nature of the argument on appeal). Even crediting the argument portion of the brief, Appellants' third point on appeal remains fatally flawed, as it fails to identify trial court error, and instead seeks to diminish the legal effect of the trial court's determination that the Appellants' Safe Harbor Petition was untimely filed.

The Appellants' argument is also deficient as it claims the standard of review for the third point on appeal is *de novo* because statutory interpretation is a legal question, but never explains or develops why statutory interpretation is central or even relevant to determining whether Appellants needed to file their own Safe Harbor Petition to secure the benefit of the safe harbor contemplated by section 456.4-420.1. This same observation establishes the deficiency of the Appellants' identification of section 456.4-420.1 as the sole and only authority in support of their third point on appeal, other than a citation to a case (*Knopik v. Shelby Investments, LLC*, 597 S.W.3d 189, 193 (Mo. banc 2020)) for the limited proposition that a beneficiary of a trust can proceed under the safe

16

harbor statute. A proposition that has never been in dispute between the parties in this matter.

Woefully absent from the Appellants' argument is the identification of any authority supporting the proposition that a person who asserts a claim in violation of a no-contest clause is nonetheless protected by the safe harbor described in section 456.4-420.1 merely because a different person has already asked the trial court to determine that the asserted claim violates the no-contest clause. *See Kelly*, 677 S.W.3d at 634.

Points One, Two, and Three preserve nothing for our review.

### *Point Six*

The Appellants' sixth point on appeal is the only point on appeal that purports to challenge the trial court's conclusion that the Appellants' Counterpetition Count II violated the Trust's no-contest clause. The Appellants' sixth point relied on provides: "The [trial] court erred in its Amended Judgment stating [the] Appellants' Counterpetition [Count] II violated the 'no-contest' clause because removal of a beneficiary for violating the 'no-contest' clause was the specific remedy authorized under Article Two(E) of the Trust." As with the Appellants' other points relied on, the sixth point relied on fails to follow the format mandated by Rule 84.04(d)(1). The sixth point relied on identifies the challenged trial court ruling and explains why the Appellants believe the ruling is erroneous. But, noticeably absent is any reference to the legal reasons supporting the Appellants' claim of reversible error. *See Storey*, 175 S.W.3d at 126.

The argument following the point relied on is also deficient. The Appellants identify the standard of review as *de novo* because that is the standard applicable to

17

"purely legal question[s]."  But the Appellants fail to explain *how* the sixth point relied on presents a purely legal question.  Moreover, the argument section is comprised entirely of conclusory statements without any citation to legal authority or an explanation for the absence of such legal authority.  Symptomatic of this deficiency, in the summarization of their points relied on, the Appellants identify the Trust itself as the "legal authority" supporting their sixth point relied on, although Rule 84.04(d)(5) requires an appellant to identify "a list of cases . . . and the constitutional, statutory, and regulatory provisions or other authority upon which that party principally relies."

Point Six preserves nothing for our review.

### *Points Four, Five, and Seven*

The Appellants' fourth, fifth, and seventh points relied on purport to challenge the trial court's conclusion that Counterpetition Count I violates the Trust's no-contest clause. The Appellants' fourth point relied on states: "The [trial] court erred in its Amended Judgment using the Counterpetition [Count] I as a reason for [the] Appellants having violated the 'no-contest' clause because the scope of the [trial] court's order setting hearing via videoconference was limited to [the] Appellants' Counterpetition [Count] II." While this point relied on identifies the challenged trial court ruling and why the Appellants believe the ruling was erroneous, the Appellants have not identified the legal reasons supporting their claim of error (the "wherein and why"), as required by Rule 84.04(d)(1)(B), preserving nothing for appellate review.  *See Storey*, 175 S.W.3d at 126.

The argument following the fourth point relied on is similarly deficient.  It recounts the procedural buildup to the July 14, 2023 hearing, and it complains that Long

18

was permitted to argue about Counterpetition Count I during the hearing, but it never develops or explains why it was an abuse of discretion for the trial court to permit Long's argument, or to rely on same to conclude that Counterpetition Count I violated the no-contest clause. The argument portion of the brief cites to no legal authority and offers no explanation for the failure to do so. *See Kelly*, 677 S.W.3d at 634. And, although in the summary listing of their points relied on, the Appellants cite Rule 2-2.2(B) as the authority supporting their fourth point on appeal, they never refer to the Rule in the argument portion of their brief, and never explain or develop how the Rule supports their claim of reversible error.

The Appellants' fifth point relied on states: "The [trial] court erred in its Amended Judgment using Counterpetition [Count] I as a reason for [the] Appellants having violated the 'no-contest' clause because [Long] waived the right to contest Counterpetition [Count] I." The fifth point relied on makes no effort to identify the legal basis supporting the assertion that Long waived her the right to challenge Counterpetition Count I as required by Rule 84.04(d)(1)(B) and preserves nothing for appellate review. *See Storey*, 175 S.W.3d at 126.

The argument supporting the Appellant's fifth point relied on embellishes the point relied on by explaining that by failing to argue that Counterpetition Count I violated the Trust's no-contest clause as an affirmative defense in Long's Answer to the Counterpetition, and by failing to address Counterpetition Count I in Long's Safe Harbor Petition, Long waived the right to argue about Counterpetition Count I during the July 14,

19

2023 hearing. Clarification in the argument portion of a brief is insufficient to preserve an issue for appeal. *Thummel*, 570 S.W.2d at 686.

Even if we were to overlook the deficiencies in the Appellants' fifth point relied on, and ignore the argument's effort to clarify the deficient point on appeal, we would be struck by the argument's failure to support the claim of trial court error by any authority. Though the Appellants cite to Rule 55.27(a) and Rule 55.09, which respectively provide that every affirmative defense must be asserted in a responsive pleading and that any averment that is not denied in a responsive pleading is deemed admitted, they never develop an argument at all, let alone by citation to relevant authorities, to explain how the trial court committed error. The failure to explain how the facts of this case and the referenced legal authorities interact to demonstrate trial error requiring reversal preserves nothing for appellate review. *In Matter of Marvin*, 682 S.W.3d at 798.

The deficiency of the argument portion of the brief is further demonstrated by the Appellants' contention that the relevant standard of review is *de novo* because the issue presented by the fifth point on appeal is one of statutory interpretation. The argument never explains this assertion and fails to intertwine the claim of error with the standard of review, as contemplated by Rule 84.04(e). *See In Interest of R.R.S.*, 573 S.W.3d at 731.

The Appellants' seventh point on appeal states: "The [trial] court erred in its Amended Judgment stating [that the] Appellants' Counterpetition [Count] I violated the 'no-contest clause' because Counterpetition [Count] I is not considered a violation of a 'no-contest clause' under Missouri law." This point on appeal is so facially deficient as to require no explanation. Claiming a trial court's ruling is error based solely on a summary

20

assertion that the ruling is wrong does not provide this Court or Long with any notice whatsoever about the nature of the alleged error, as no "wherein and why" is included in the point relied on. *See Storey*, 175 S.W.3d at 126. Point seven on appeal preserves nothing for our review. *See id.*

The briefing deficiencies continue in the argument supporting the seventh point relied on. As with many of the other points previously discussed, the Appellants summarily allege that the applicable standard of review is *de novo* without any explanation as to why the seventh point on appeal concerns a purely legal question. Moreover, though the argument developing point seven on appeal represents the only time in their brief that the Appellants engage in some measure of potentially applicable legal argument, as previously explained, the argument is not permitted to cure a facially deficient point relied on. *See Thummel*, 570 S.W.2d at 686

Finally, the Appellants' fourth, fifth, and seventh points on appeal are insufficient to preserve an issue for appellate review because they ignore the Appellants' burden to demonstrate both legal error ***and*** prejudice resulting from that legal error. *TracFone Wireless, Inc. v. City of Springfield*, 557 S.W.3d 439, 444 (Mo. App. S.D. 2018). In a bench-tried case, such as this one, "prejudice will not be found . . . unless an appellant shows that there was no authorized route by which the trial court could have arrived at its result. If an outcome-sustaining route is left unchallenged or undefeated, the judgment must be affirmed." *Id.*

As discussed *supra*, the Amended Judgment found that the Appellants violated the Trust's no-contest clause by the assertion of Counterpetition Count I and Count II. As a

21

result, the trial court concluded that the Appellants' status as beneficiaries of the Trust be terminated and that their pleadings should be stricken as they no longer had any standing to challenge the Trustee's Petition. The Appellants attempted to challenge the trial court's conclusion that the Counterpetition Count II violated the Trust's no-contest clause in point relied on six, but did so deficiently, preserving nothing for appellate review. It is therefore irrelevant whether points four, five, or seven preserved issues for appellate review relative to Counterpetition Count I. The absence of a preserved challenged to the determination that Counterpetition Count II violated the Trust's no-contest clause is fatal to the Appellants' appeal. *STRCUE, Inc. v. Potts*, 386 S.W.3d 214, 219 (Mo. App. W.D. 2012) (holding that an appellant's failure to challenge a finding or ruling that would independently support the conclusion reached by the trial court is fatal to the appeal).

Points Four, Five, and Seven preserve nothing for our review.

### *Point Eight*

In the Appellants' eighth point on appeal, the Appellants purport to challenge the trial court's conclusion that Long's Trust Petition did not violate the Trust's no-contest clause. Appellants' eighth point provides: "The [trial] court erred in its Amended Judgment by not finding [Long] in violation of the 'no-contest clause' because [Long] contested Article One(G) of the Trust in [Long's] pleadings and in the hearing." The eighth point relied on fails to state the legal reasons for the Appellants' claim of reversible error and fails to explain why those legal reasons support their claim of reversible error. In doing so, the eighth point relied on fails to state "wherein and why" the trial court erred, preserving nothing for appellate review. *See Storey*, 175 S.W.3d at 126.

22

The briefing errors continue in the argument supporting the eighth point relied on. The Appellants once again identify the standard of review as *de novo* for purely legal questions without developing or explaining how the eighth point on appeal implicates a purely legal question. And, the argument is comprised entirely of conclusory factual statements, with limited citations to the record and without any citation to legal authority, or an explanation for the absence of such citations to authority, thereby preserving nothing for appellate review. *See Kelly*, 677 S.W.3d at 634.

Point Eight preserves nothing for our review.

## Conclusion

The Appellants' appeal is dismissed due to substantial and material Rule 84.04 briefing deficiencies.

_____

Gary D. Witt, Judge

All concur