

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| NATHAN GOODPASTURE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD87412 |
| | ) | |
| SANDY GOODPASTURE, | ) | Opinion filed:  October 7, 2025 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI**
**THE HONORABLE ALISHA D. O'HARA, JUDGE**

Before Division Two:  Lisa White Hardwick, Presiding Judge,
Edward R. Ardini, Jr. , Judge and W. Douglas Thomson, Judge

Sandy Goodpasture ("Mother") appeals from the trial court's judgment of modification.  Mother raises eight points on appeal, arguing the trial court erred by striking Mother's pleadings, generally (Points I and II), by specifically striking Mother's motion for family access and Mother's motion for civil contempt (Point IV), by failing to adequately examine domestic violence allegations against Nathan Goodpasture ("Father") (Point III), by imputing Mother's wage in the child support calculation (Point V), by not allowing Mother the opportunity to challenge the competency of the interpreter at trial (Point VI), by faulting Mother's religious

beliefs as it applies to a "gift economy" (Point VII), and by not discharging the guardian ad litem ("GAL") (Point VIII). Finding no error, we affirm.

**Factual and Procedural History**

Mother and Father married in 2004 and had three children during the marriage. Their marriage was dissolved on April 4, 2019. The judgment of dissolution awarded the parties joint legal and joint physical custody of their minor children and ordered Father to pay Mother $1,000 per month in child support.

On February 14, 2022, Father filed a motion to modify the decree of dissolution, requesting a modification of custody and termination of his child support obligation. All of the children were still minors at the time of filing. In his motion to modify, Father made several allegations, including, generally: Father "has attempted on numerous occasions to schedule the therapy as required by the [j]udgment in this cause, but [Mother] has delayed or neglected to consent to such therapy" "such that the children have not attended therapy since August of 2021[.]" Mother has also "cancelled multiple medical and therapist appointments" for the children and has failed to schedule the minor children with therapy. Rather, Mother has "sought therapeutic care for the children with a hypnotist[.]" These failures by Mother are significant in that at least one child has suicidal ideations; "[Mother] has made numerous false allegations to the Missouri Children's Division regarding the abuse or neglect allegedly perpetrated by [Father];" and, the "Missouri Children's Division has recommended in-home services to the parties, but [Mother] has refused these services."

2

Father also filed a motion asking the trial court to appoint a GAL. In May 2022, the trial court appointed a GAL and ordered both Mother and Father to deposit $500 for GAL fees ("first ordered GAL payment").[1] Over the years, GAL's investigation was extensive and detailed, made so by Mother's continued allegations which were ultimately unfounded, Mother's lack of cooperation, her lack of compliance with other trial court orders, and the overall severity of the children's situation. We present a detailed account of the proceedings to gain a better understanding of the extent of GAL's efforts and the time expended in accordance therewith.

In July 2022, Mother brought the children to the GAL's office and requested that the GAL speak with them, which she did. On that day, Mother "raised additional allegations regarding physical abuse against [Father]." The GAL immediately began investigating those allegations. Also as a result of the children's visit, the GAL sought a court order to have the minor children submit to mental health evaluations.[2] As the basis for her motion, the GAL alleged suicidal ideations by the children, her resulting concerns for their mental health, and the inability of the parties to agree on a therapist. The GAL's request was granted, and the trial court specifically ordered the parents to comply and produce medication, school, and vaccination records to medical professionals. Further, the court ordered that "the only person to receive the results of the children's mental health evaluations

---

[1] Both parties ultimately complied with this order to deposit GAL fees.
[2] Similarly, Father had also filed a motion for counseling, seeking an order that the minor children "attend therapy from a licensed counselor/therapist."

<u>at this time</u> shall be the Guardian ad Litem[.]" (emphasis in original). The court warned contempt may follow should non-compliance occur.

In August 2022, Mother, acting *pro se*, filed a motion for family access[3] wherein she claimed Father had kept the children from her in July and August, all of which Father denied. The GAL again took appropriate investigative action.[4]

Mother's lack of cooperation bled over into discovery aspects of the litigation. In August 2022, when Mother was nearly three months late in replying, Father filed a motion to enforce discovery. At an October 2022 hearing regarding same, the trial court ordered Mother to respond to Father's discovery within 15 days.[5] Mother did not comply with the discovery enforcement order, ultimately leading Father to file a motion for sanctions due to this failure. Instead, Mother filed an application for habeas corpus asking the trial court to "grant a Writ of Habeas Corpus requiring that [Father] bring with him [Mother's] minor children[,]" and an amended responsive pleading to Father's motion to modify which included a counter-motion to modify the decree of dissolution as to custody.

Father filed a motion for temporary sole physical and temporary sole legal custody with supervised visitation to Mother on November 23, 2022. Father cited the report of a licensed professional counselor stating that the oldest child "would

---

[3] This action was filed as part of the modification case, and not as a separate case.
[4] On September 2, 2022, Mother acquired the services of an attorney, who entered his appearance on her behalf. This was the first of four attorneys to represent Mother over the course of the litigation.
[5] The GAL attended the hearing, as well, and expressed the difficulty in locating a therapist, stating "these parties have a history with some of the better known, more reliable providers," thus leading to delays in locating a psychological evaluation provider.

like to continue on with his life feeling safe and free from the fear of enduring any further abuse by this mother." Father made several other allegations, all claiming that the minor children have expressed concern about their safety and well-being when spending time at Mother's house. During this time frame, the GAL provided a custody recommendation to the parties. The GAL also moved for an additional deposit of fees due to the extensive work incurred on the case.

Father's motion for temporary custody and motion for sanctions, Mother's application for a writ of habeas corpus, and the GAL's motion for deposit of additional GAL fees were heard on November 30, 2022. At the hearing, the trial court explained that the GAL had set out the recommendation in great detail because "[b]oth parents have shown that their animus towards the other parent is more important than the needs of the minor children[.]" After discussions between the parties, the trial court ordered an approximately equal split custody schedule for the younger two children, and that the oldest child reside with Father but for an every-other-weekend schedule with Mother, such that all siblings would be together on weekends. This constituted the first of several temporary motions and restraining orders entered by the trial court. With this determination, the trial court determined Mother's habeas corpus application was moot.[6] The trial court

---

[6] Father's motion for sanctions was granted and Mother was ordered to pay Father $1,000 in attorney's fees and complete discovery within ten days. These fees were not paid in full at the time of trial and were incorporated as a judgment in favor of Father against Mother in the court's final judgment.

also ordered the parties to deposit an additional $2,500 to compensate the GAL for her work ("second ordered GAL payment").

Notwithstanding the agreed-upon temporary custody agreement, ten days after the hearing, Mother filed a motion for contempt[7] and to dismiss Father's motion to modify. Here, Mother claimed Father "willfully and contemptuously disregarded and disobeyed" the trial court's April 4, 2019 judgment dissolving the parties' marriage. Mother asked the trial court to hold Father in contempt for failing to "abide by the terms and conditions of the [dissolution] [j]udgment" and "dismiss [Father's] current Motion to Modify[.]"

The GAL continued to investigate the case, which led to further questions surrounding Mother's allegations. On December 21, 2022, pursuant to an application for a temporary restraining order filed by GAL,[8] the trial court entered an order which "enjoined and restrained" Mother "from having any custody, parenting time, visitation or contact with the [oldest child], age 13, including

---

[7] This action was also filed as part of the modification case, and not as a separate case.

[8] The GAL's application for a temporary restraining order is not part of the record on appeal. However, the trial court's December 21, 2022, temporary restraining order contains the following findings:

> 5. That on or about December 9, 2022 the [GAL] was contacted by the school district with concerns of threats of self harm by the [oldest child] who was then transported to [a child welfare and behavioral healthcare organization] for a psychiatric evaluation.
> 6. On or about December 19, 2022 the [GAL] was provided with discharge paperwork for the [oldest child] which indicated that further therapy and medication was prescribed and advised by the professionals at the facility.
> 7. The mandated reporter made a hotline to the Missouri Children's Division.
> 8. That the [oldest child] again threatened self harm on December 21, 2022 if he had to go to [Mother's] home for the holidays.

telephone calls, facebook or other social media until further Order of the Court" ("TRO 1").

Mother's counsel withdrew "due to communication issues" on January 2, 2023. Mother was not provided notice of such withdrawal. A trial was had on March 14, 2023 (the "first trial"), with Mother appearing *pro se*. Prior to the commencement of such trial, Mother made an oral motion for a change of judge and an oral motion for a continuance, both of which were denied. Among other statements to the trial court, Mother advised that "her Senator has been notified."

Part of the evidence adduced at the first trial came from the GAL's detailed and comprehensive recommendation following her investigation. Due to the sensitive nature of the GAL's recommendation, the trial court informed the parties it was to be kept confidential and not shared with non-parties. Mother refused. Thus, to ensure that the document was not shared with anyone other than the parties in any manner, the trial court ordered Mother to review the report in an anteroom accompanied by a deputy. Immediately after exiting the courtroom with the document, however, deputies observed Mother showing it to other individuals, requiring the trial court to confiscate the report from Mother.

At the conclusion of evidence in the first trial, the trial court took the cause under advisement. In consideration of the evidence at trial, the following day Father filed an emergency motion for a temporary restraining order, asking the trial court to restrain Mother "from exercising any and all custodial rights[.]" The

trial court granted Father's motion, restraining Mother from "having any custody, parenting time, visitation or contact with" all three minor children ("TRO 2").

The trial court entered its judgment from the first trial on March 23, 2023. Through newly-acquired counsel, Mother timely filed a motion for a new trial, alleging that the trial court erred in allowing her attorney to withdraw as counsel "without any notice to Mother or opportunity for her to be heard[.]" Ultimately, Mother was granted a new trial as a result of this claim.[9]

The GAL again took action. Upon the grant of new trial, the GAL moved for the trial court to enter a temporary parenting plan due to her heightened concerns about Mother "and the well being of the minor children[.]" Father also filed a related motion for temporary custody of the minor children. All matters were noticed for hearing.[10]

Mother then filed a motion to dismiss Father's motion for temporary orders and a motion to seal the record and/or for continuance of the upcoming hearing. On the hearing date, prior to all matters being taken up, the parties informed the trial court that an agreement had been reached to continue the hearing. The parties also asked the trial court to enter a temporary restraining order that mimicked the provisions in TRO 2, with the exception that Mother be allowed supervised visits with the younger two children through a third-party organization, Transitions Family Visitation Program ("TRO 3"). The trial court continued the

---

[9] Counsel acquired for the new trial motion had entered his appearance for that limited purpose. After the ruling thereon, counsel was allowed to withdraw.

[10] At this juncture, Mother again acquired counsel, the third to represent her.

matter, and stated that "[TRO 3] will remain in place until the [hearing on August] 16[.]" The trial court also ordered each of the parties to pay an additional $2,000 in GAL fees ("third ordered GAL payment") and that these and all previous GAL fees be paid prior to the August 16 hearing.

On July 27, 2023, Mother filed additional motions seeking discovery on an expedited basis from GAL. The trial court granted Mother's request on August 8, 2023, requiring GAL to respond to Mother's request by August 14, 2023. The GAL then moved for a protective order and other, related motions. Commensurate therewith, Father filed a second emergency motion for a temporary restraining order enjoining Mother from custody of the minor children. All motions were to be heard on the previously-set August 16, 2023 hearing date.[11]

At the August 16, 2023 hearing, as a result of the GAL's and Father's respective motions, the trial court entered a temporary restraining order which enjoined and restrained Mother "from having any custody, parenting time, visitation or contact with the minor children, including telephone calls, facebook or other social media, until further Order of the Court[,]" but for a period of supervised visitation with the youngest two children "one day per week through the [Transitions program.]" ("TRO 4").

Two days later, the GAL filed a motion to suspend Mother's participation in the Transitions program and her supervised visitation due to concerns regarding

[11] Prior to the August 16, 2023, hearing, Mother again acquired new counsel. This was Mother's final attorney. Mother's third attorney was allowed to withdraw.

the best interests of the children. The GAL alleged that she had "been made aware of some concerning behaviors of the [younger two] children since beginning" supervised visits through the Transitions program. The GAL was informed that Mother was "disruptive to other families, violat[ed] the rules . . . then react[ed] inappropriately when corrected, [and spoke] about unsuitable topics," such as the court case. By later order, the trial court suspended Mother's visits with the children through the Transitions program as a result of GAL's motion. Thus, in brief review, in this litigation Mother's time with the children began with an approximately equal split custody schedule as to the younger two children and an every-other-weekend schedule with the oldest child, and has now been virtually eliminated altogether.

Mother did not pay the required GAL fees by the court's August 16, 2023 deadline. The GAL filed a motion to strike Mother's pleadings as a sanction for same. The GAL cited the extended period of litigation, and that Mother had not paid either the second or final deposits towards GAL fees. This is despite Mother's vigorous motion practice and her ability to hire three attorneys since the conclusion of the first trial. As later admitted by Mother in her motion to reinstate pleadings, the trial court found "the additional fees were the result of [Mother] failing to abide by the Court's directives." The trial court granted the GAL's motion to strike Mother's pleadings, but provided such pleadings would be reinstated upon Mother's compliance with the GAL fee orders. This never occurred.

10

On October 31, 2023, the day before the second trial, Mother filed a motion to reinstate her pleadings, a motion to discharge the GAL, and an application for a continuance. The trial court took up and denied these motions prior to the start of the second trial. The matter then proceeded to trial on November 1, 2023, and December 1, 2023.

On March 29, 2024, the trial court entered its judgment of modification. Initially, the trial court noted that, although Mother's pleadings were stricken by the trial court, Mother "was allowed to testify and present evidence so the Court would have all available and relevant information to decide on the issues presented in [Father's] motion to modify." The court also initially addressed Mother's argument that she was subject to a language barrier, observing that after "a year and a half of litigation . . . with multiple evidentiary hearings conducted in English[,]" Mother alleged English was not her primary language and she was unable to understand the proceedings. Accordingly, a Spanish interpreter was provided for Mother during the entirety of the trial. During the trial, however, Mother argued that, although she could not understand English, she knew the interpreter was not providing an accurate translation of English to Spanish. The trial court further observed that Mother refused to utilize the interpreter, instead desiring to have discussions with the court in English.

With these prefatory observations made, the court proceeded to the motion at hand[12] and found that it would be in the children's best interests for Father to have sole legal and sole physical custody, with Mother to have "no visitation or custody periods with the minor children." In the judgment, the trial court noted that it had observed Mother's behavior before, during, and after multiple court appearances, as well as her "specific refusal and violation of the Court's order" on occasion. "Such behavior calls into question [Mother's] willingness and ability to follow" further orders of the trial court.

The trial court found Mother had "emotionally, physically and/or psychologically abused the children to an extent never seen before by this Court[.]" By way of example of the exhaustive list of concerns contained in the trial court's 44-page judgment, we note the trial court found "Mother has failed to perform her functions as a parent," including but not limited to, "depriving the children of food, attention, and affection as a form of punishment," and "threatening the children (and following through with) giving away the children's pets to compel [them] to lie to the police, children's division case workers, the [GAL], teachers, and other[s] to perpetuate the false narrative that Father is abusive and neglectful[.]" The trial court found credible Father's testimony that the children stated "[p]lease don't make us go to therapy on a night we go to [M]om's. We will be interrogated, and our pets will be given away." And, the court found no evidence "substantiating

---

[12] The sole motion to address was Father's motion for modification given that Mother's pleadings had been stricken.

Mother's claims that Father has abused or neglected the children." Rather, the court found credible the children's testimony that, as to two of them, "there is no safe place at Mother's house," and as to the third child, "the dog kennel is her safe place at Mother's house."

Mother's ability to care for the children was also questioned in the judgment, given that she appears unable to control her *own* actions. The trial court found that Mother made such "a ruckus" at the children's school that local police had to be called on numerous occasions. Additionally, medical providers and therapists refused to care for the children due to Mother's actions, including one doctor's office calling the local police to have Mother physically removed from his office due to her behavior. Credible testimony was provided by the Clay County Transitions Center that Mother "was disruptive, started name calling, did not trust anyone, and failed to follow the program rules[.]"

The trial court also referred to Mother's reference that she counts on a "gift economy," rather than working. This "has to do with distribution of resources and more tax efficient benefits, such as receiving cash, receiving a donated car from one church, etc." This caused the court concern "about whether Mother will be able to continue making" mortgage payments, and thus not have housing for the children, "without employment."

Finally, the court awarded GAL fees totaling $22,937. The trial court also terminated Father's child support obligation to Mother and ordered him to pay a portion of the outstanding GAL fees. The trial court also ordered Mother to pay

13

Father child support, to pay Father attorney's fees, and to pay a portion of the outstanding GAL fees.

Mother filed a timely motion for a new trial, which was never ruled on by the trial court and thus deemed denied. This appeal follows.

## Standard of Review

"Appellate review of a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *Hershewe v. Perkins*, 102 S.W.3d 73, 75 (Mo. App. W.D. 2003). "Accordingly, the trial court's judgment will be affirmed on appeal unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Whitton v. Whitton*, 707 S.W.3d 42, 46 (Mo. App. W.D. 2025) (citing *Brown v. Brown*, 680 S.W.3d 507, 519-520 (Mo. App. W.D. 2023)). "The appellate court defers to the trial court's credibility determinations and the weight afforded to evidence." *Id.* (citing *Brown*, 680 S.W.3d at 520). "We presume the trial court's judgment is valid and an appellant has the burden to demonstrate that it is incorrect." *Interest of S.M.W.*, 658 S.W.3d 202, 212 (Mo. App. W.D. 2022) (citation omitted).

## Rule 84.04 Briefing Deficiencies

"Rule 84.04 plainly sets forth the required contents of briefs filed in all appellate courts." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022). The Rule's mandatory nature is critical "in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made." *Wright-Jones v. Mo. Ethics Comm'n*, 544 S.W.3d 177, 178 n.2 (Mo. banc

14

2018) (quoting *Brown v. Ameristar Casino Kan. City, Inc.*, 211 S.W.3d 145, 147 (Mo. App. W.D. 2007)). *Lexow* set forth the importance of adherence to the briefing requirements laid out in Rule 84.04:[13]

> When [an appellant] fail[s] in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume such a role. In addition to being inherently unfair to the other party to the appeal, it is unfair to parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals.

*Lexow*, 643 S.W.3d at 505 (quoting *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978)).

"[W]hen the deficiencies affect our ability to understand and adequately address the claims of error, the brief preserves nothing for review." *Freeland v. Div. of Emp. Sec.*, 647 S.W.3d 22, 24 (Mo. App. W.D. 2022) (quoting *Murphree v. Lakeshore Ests., LLC*, 636 S.W.3d 622, 624 (Mo. App. E.D. 2021)). With this in mind, we begin by addressing the deficiencies in Mother's briefing and conclude such deficiencies significantly impede our review of the merits on several points.

**Statement of Facts**

Rule 84.04(c) requires the statement of facts in an appellate brief to be "a fair and concise statement of the facts relevant to the questions presented for determination without argument." Further, "[a]ll statement of facts shall have

---

[13] All rule references are to Missouri Court Rules (2024).

specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or exhibits." *Id*. "The purpose of the statement of facts is to provide 'an immediate, accurate, complete[,] and unbiased understanding of the facts of the case.'" *Phox v. Boes*, 702 S.W.3d 498, 503 (Mo. App. W.D. 2024) (alteration in original) (quoting *Placke v. City of Sunset Hills Mo.*, 670 S.W.3d 228, 231 (Mo. App. E.D. 2023)). "Therefore, '[i]nterspersing argument throughout the statement of facts violates Rule 84.04(c).'" *Id*. (alteration in original) (quoting *Placke*, 670 S.W.3d at 231).

Mother's statement of facts is deficient in several respects. First, her three-page statement is simply incomplete. In reviewing the facts as stated in Mother's brief, we are left to wonder what has occurred, both substantively prior to the litigation and procedurally throughout the litigation. Substantively, we can discern this is a domestic relations matter, but we know not the children involved, their ages, or the background of this modification of custody case. Procedurally, Mother has not discussed the underlying motion to modify, counter-motion, or other significant motions throughout the case to any extent, including the underlying trial court judgment. Instead, we are presented a disjointed statement of what has occurred which barely skims the surface, and which is not tied together in any understandable way. Thus, we do not have a "concise statement of the facts relevant to the questions presented for determination" as required. Rule 84.04(c).

Next, as to the limited facts presented, Mother's citations to the relevant portions of the record are inadequate. The majority of Mother's citations to the

16

record simply refer to either her motion for new trial or the trial court's judgment. Neither of these are evidence from which statements of fact can be supported. In one of only two times Mother cites to the transcript, she references seven pages of transcript to support her three sentences of facts. This leaves us "searching for a needle in a haystack[.]" *Phox*, 702 S.W.3d at 504 (alteration in original) (quoting *Brown v. Brown*, 645 S.W.3d 75, 83 (Mo. App. W.D. 2022)). This, we will not do. In short, "[i]t is improper for this Court to 'spend time searching the record to determine if factual assertions in the brief are supported by the record.'" *Interest of S.R.W.*, 715 S.W.3d 223, 229 (Mo. App. W.D. 2025) (quoting *Phox*, 702 S.W.3d at 504). To do so would be to act impermissibly "as an advocate by scouring the record for facts to support" Mother's contentions. *Murphy v. Steiner*, 658 S.W.3d 588, 594 (Mo. App. W.D. 2022) (citation omitted).

Finally, Mother's statement of facts is argumentative. Rule 84.04(c) provides that the statement of facts is to be "presented for determination without argument." By way of a single example, one of many to which we could refer, Mother states that "[Mother] maintains that the GAL should have been removed from this case for failing to properly investigate this case as set forth in [Mother's] Motion to Discharge the Guardian Ad Litem." This statement fails to provide a fact which assists this Court, but rather presents an argument asserted by Mother.

The deficiencies in Mother's non-compliant statement of facts is further compounded by her failure to provide us with the trial court exhibits as part of the record. Rule 81.12(a) provides that the record on appeal must "contain all of the

17

record, proceedings *and evidence* necessary to the determination of all questions to be presented[.]" (emphasis added). "Pursuant to Rule 81.12, the appellant has the duty to . . . compile the record on appeal for the reviewing court to determine the questions presented; without the required documents, this Court has nothing to review." *Interest of K.K.S.S.*, 689 S.W.3d 252, 256-57 (Mo. App. W.D. 2024) (quoting *C.T. v. E.Y.*, 644 S.W.3d 336, 337 (Mo. App. E.D. 2022)). Here, the trial court exhibits were a necessary part of the record on appeal because, as best we can discern, they relate to several arguments propounded by Mother.

Mother's statement of facts is deficient in that it is scant on meaningful information, not "fair and concise," does not consistently cite the record, and is not presented "without argument." A deficient statement of facts, standing alone, is sufficient to warrant dismissal of an appeal. *See Hicks v. Northland-Smithville*, 655 S.W.3d 641, 648 (Mo. App. W.D. 2022).

**Points on Appeal**

Rule 84.04(d)(1) requires that points on appeal shall:

(A) Identify the trial court ruling or action that the appellant challenges;
(B) State concisely the legal reasons for the appellant's claim of reversible error; and
(C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

The requirements for the points relied on are mandatory as they are intended to provide this court and the opposing party notice of the arguments presented by appellant.

> "The function of [points relied on] is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647 (Mo. banc 1997). A deficient point relied on requires the respondent and appellate court to search the remainder of the brief to discern the appellant's assertion and, beyond causing a waste of resources, risks the appellant's argument being understood or framed in an unintended manner. *Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. [E.D.] 2017). "A point relied on which does not state 'wherein and why' the trial court [or administrative agency] erred does not comply with Rule 84.04(d) and preserves nothing for appellate review." *Storey v. State*, 175 S.W.3d 116, 126 (Mo. banc 2005).

*Lexow*, 643 S.W.3d at 505.

*Murphy v. Carron* set forth the standards of review which may be utilized in this case. 536 S.W.2d 30, 32 (Mo. banc 1976). "[T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id*. Here, in her points on appeal, Mother has failed to articulate which *Murphy* ground she relies upon in seeking reversal of the trial court judgment. Nowhere in her points on appeal, or in her argument for that matter, does she assert there was no substantial evidence to support the trial court's judgment, that it was against the weight of the evidence, or that it erroneously declared or applied the law. "We can reverse a judgment 'only on a *Murphy* ground.'" *Malin v. Cole Cnty. Prosecuting*

19

*Att'y*, 678 S.W.3d 661, 671 n.7 (Mo. App. W.D. 2023) (quoting *S.M.W.*, 658 S.W.3d at 212. "'If a point on appeal fails to identify which one of the *Murphy v. Carron* grounds applies, Rule 84.04 directs us to dismiss the point.'" *Id.* (quoting *S.M.W.*, 658 S.W.3d at 212).

We cannot simply suggest which of the *Murphy* grounds should be applied to a given point on appeal. And, here, where neither the rubric necessary for a no-substantial-evidence nor an against-the-weight-of-the evidence ground is employed in any argument, we cannot discern that either of these *Murphy* grounds was intended.[14] Accordingly, all such points are ripe for dismissal.

**Argument**

The argument section of the brief must "explain why, in the context of the case, the law supports the claim of reversible error. It should advise the appellate court how principles of law and the facts of the case interact." *Marvin v. Kensinger*, 682 S.W.3d 788, 798 (Mo. App. W.D. 2023) (quoting *In re Marriage of Fritz*, 243 S.W.3d 484, 487 (Mo. App. E.D. 2007)). An appellate court "cannot comb the legal file for facts to better understand [Mother's] argument, 'nor can we do so and remain steadfast to our role as the neutral arbiter of the case.'" *Id.* (quoting *Sharp v. All-N-One Plumbing*, 612 S.W.3d 240, 245-46 (Mo. App. W.D. 2020).

---

[14] As discussed below, we are able to discern the gist of some points which appear to claim a misapplication of law. We will address them.

20

Further, Rule 84.04(e) requires that "[a]ll factual assertions in the argument shall have specific page references to the relevant portion of the record on appeal, i.e., legal file, transcript, or exhibits." "If the [C]ourt were to take the time on its own initiative to comb the record for support of factual assertions in a brief, we would, in effect, become an advocate for the non-complying party." *R.M. v. King*, 671 S.W.3d 394, 399 (Mo. App. W.D. 2023) (alteration in original) (quoting *Wong v. Wong*, 391 S.W.3d 917, 919 (Mo. App. E.D. 2013)). We cannot do this. *Id.*

Many of Mother's arguments surround the trial court's ruling striking her pleadings. By way of example, in Point II, Mother argues the trial court erred in striking her pleadings and "did not benefit from, and in fact, was deprived of, necessary information for the court to review[.]" She then lists 26 instances as concerns "involving the safety of the Children." In Point VIII, Mother's argument is that these same 26 instances should have been addressed by the GAL, essentially asserting GAL should have addressed these because Mother could not do so, given that her pleadings had been struck. In Point III, Mother argues the trial court erred when "at trial it failed to adequately examine domestic violence allegations against [Father] because section 452.400 explicitly requires the court to consider evidence of domestic violence when determining visitation rights[.]" Mother, however, never asserts in a point or explains in argument the *legal reasons* why the trial court erred in striking her pleadings. Instead, as exemplified above, Mother focuses only on the *result* of the trial court's decision to strike her pleadings without addressing any legal reason *why* the court erred in doing do. This

21

approach by Mother does not "explain why, in the context of the case, the law supports the claim of reversible error." *Marvin*, 682 S.W.3d at 798.

We also note that the aforementioned 26 instances of concern do not contain a single citation to the record on appeal. Similarly, in another point, Mother claims that "in reviewing the transcript" it is "very apparent" that certain things occurred. Yet, a specific citation to any portion of the legal file or transcript is notably absent. Further, in Point VI Mother argues the trial court erred by not allowing her to "challenge the competency of the interpreter[,]" and refers us to the Code of Professional Responsibility for Interpreters, but Mother does not direct us to any particular portion of such Code to support her proposition. Here, Mother also directs us to a six-page selection of the transcript that "address[es] [her] concerns." Once again, this would require this Court to exceed the boundaries of what we are permitted to do by stepping into the role of Mother's advocate. Essentially, time and again Mother places the onus of sifting through the record or the law on this Court to find reasons supporting her assertions. Doing so, however, would place this Court in the role of advocating her position. This, we will not do. *See Phox*, 702 S.W.3d at 505 ("It is not our role to act as [the appellant's] advocate[.]").

Further, Mother provides citations to caselaw and explanations of those cases untethered to the facts of the case at hand. Mother fails to demonstrate almost any interaction between the law and the facts. In doing so, Mother cannot meet her burden on appeal as she is unable to demonstrate how the facts of her case and the law interact to demonstrate that the trial court committed reversible

22

error. *See Marvin*, 682 S.W.3d at 798-99. This, coupled with the lack of citations to the legal file is fatal as "[w]e cannot comb the legal file for facts to better understand [Mother]'s argument, 'nor can we do so and remain steadfast to our role as the neutral arbiter of the case.'" *Id*. at 798 (quoting *Sharp*, 612 S.W.3d at 245-46).

Finally, within Point VI, Mother also contends the trial court should have kept a record of the *interpreter's* transcript, as interpreted into Spanish. In her one-and-a-half-page argument, Mother admits this "would be a case of first impression." In another one-and-a-half-page argument in Point VII, for the first time on appeal, Mother asserts a "Missouri Constitution Article I [Section] 5 religious freedom-liberty of conscience and belief limitations" argument. In both points, Mother's aforementioned briefing deficiencies culminate and prove fatal. Moreover, they remind us that the failure to file briefs in compliance with briefing rules leaves this Court with "the dilemma of deciding that case (*and possibly establishing precedent for future cases*) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency." *Lexow*, 643 S.W.3d at 505 (emphasis added) (quoting *Thummel*, 570 S.W.2d at 686). Matters of "first impression" or constitutional claims[15] exemplify why proper briefing is of such importance.

---

[15] We realize there are other substantial problems with Mother's constitutional claim. However, given that we are denying such claim due to briefing deficiencies, we need not address these further issues.

For the aforementioned reasons, we deny Points II, III, VI, VII, and VIII due to briefing deficiencies.[16]

However, "[w]e prefer to decide an appeal on the merits where the disposition is not hampered by rule violations and we can readily understand the argument." *R.M.*, 671 S.W.3d at 397 (citation omitted). Here, because we believe we understand the gist of Points I, IV, and V, we address them.

**Points I and IV**

In Point I, Mother argues the trial court erred in granting the Respondent's[17] motion to strike Mother's pleadings because the trial court misapplied section 514.040.5 in that "the statute explicitly states failure to pay such fees shall not be used as a basis to limit a party's prosecution or defense of an action."[18]

Section 514.040 governs when a plaintiff may sue as a pauper, how such status is determined, and when and how costs and expenses may be waived when such is the case. In relevant part, it provides:

> 3. Where a party is represented in a civil action by a legal aid society or a legal services or other nonprofit organization funded in whole or substantial part by moneys appropriated by the general assembly of the state of Missouri, which has as its primary purpose the furnishing of legal services to indigent persons, by a law school clinic which has

---

[16] When addressing some points on appeal and determining others suffer from briefing deficiencies, we deny such deficient points. *See LaBranche v. Cir. Ct. of Jackson Cnty.*, 703 S.W.3d 226, 238 (Mo. App. W.D. 2024).

[17] Mother argues it was error for the trial court to grant *Respondent's* motion to strike her pleadings. The record on appeal reflects that it was the GAL who filed a motion to strike Mother's pleadings. Mother acknowledges this in her Point I argument. Thus, as we best understand Mother's intent, she is challenging the trial court's grant of the *GAL's* motion to strike Mother's pleadings in Point I. We proceed accordingly.

[18] All statutory citations are to RSMo (2016), as updated by supplement, unless otherwise noted.

as its primary purpose educating law students through furnishing legal services to indigent persons, or by private counsel working on behalf of or under the auspices of such society, all costs and expenses, except guardian ad litem fees as provided by this subsection, related to the prosecution of the suit may be waived without the necessity of a motion and court approval, provided that a determination has been made by such society or organization that such party is unable to pay the costs, fees and expenses necessary to prosecute or defend the action, and that a certification that such determination has been made is filed with the clerk of the court. In the event an action involving the appointment of a guardian ad litem goes to trial, an updated certification shall be filed prior to the trial commencing. The waiver of guardian ad litem fees for a party who has filed a certification may be reviewed by the court at the conclusion of the action upon the motion of any party requesting the court to apportion guardian ad litem fees.

4. Any party may present additional evidence on the financial condition of the parties. Based upon that evidence, if the court finds the certifying party has the present ability to pay, the court may enter judgment ordering the certifying party to pay a portion of the guardian ad litem fees.

5. Any failure to pay guardian ad litem fees shall not preclude a certifying party from filing future suits, including motions to modify, and shall not be used as a basis to limit the certifying party's prosecution or defense of the action.

"[W]e read sections in a statutory scheme *in pari materia*, and as consistent as possible so that no provision is rendered meaningless." *A.I.A.K. v. T.M.K*, 695 S.W.3d 118, 136 (Mo. App. W.D. 2024) (citing *Holmes v. Steelman*, 624 S.W.3d 144, 149 (Mo. banc 2021)).

In applying section 514.040 to Mother's Point I argument, we must begin with subsection 3 thereof. "The only requirements [of section 514.040.3] are that the legal services organization representing the party make a determination that the party is unable to pay the fee and a certificate of such determination be filed with the clerk of the court." *State ex rel. Holterman v. Patterson*, 24 S.W.3d 784,

25

786 (Mo. App. E.D. 2000). When this is done, the underlying party is a "certifying party," as that term is used in the statute. *See* section 514.040.4 ("[I]f the court finds the *certifying party* has the present ability to pay, the court may enter judgment ordering the *certifying party* to pay [some GAL fees]." (emphasis added)). Under certain circumstances, GAL fees are included in the certifying party's waived expenses. When the section 514.040.3 procedure is properly followed by such a legal services organization, section 514.040.5 provides the enforcement mechanism for waived GAL fees, stating the failure to pay same "shall not be used as a basis to limit the certifying party's prosecution or defense of the action."

Mother's argument focuses solely on the section 514.040.5 statement that GAL fees "shall not be used as a basis to limit" her defense or prosecution of an action. Mother's argument misses the mark. For this to apply, Mother must be a "certifying party," as determined pursuant to section 514.040.3. Here, such a party does not exist, nor could such a party exist.

First, none of Mother's four attorneys in this action represented in their entry of appearance that they were "working on behalf of or under the auspices of" such a section 514.040.3 organization. Nor does Mother's briefing direct us to any evidence that she was represented by any organization or person described in section 514.040.3. Accordingly, no attorney representing Mother could qualify to render a section 514.040.3 determination.

Further, even if one of her attorneys did work "on behalf of or under the auspices of" such a section 514.040.3 organization—a fact not proven—the required certification was not filed with the clerk of court. *See* section 514.040.3 ("a certification that such determination has been made is filed with the clerk of the court"). Mother does not direct us to such a determination in the Court's record nor does our search find one. Mother provides no argument contrary to this plain reading of the statute.

Similarly, in Point IV, Mother argues the trial court erred in striking her family access motion and civil contempt motion due to the nonpayment of GAL fees. Specifically, Mother claims "statutory guidelines in section 514.040 RSMo do not explicitly permit the striking of motion [sic] as a penalty for non-payment in that such action would require clear statutory authority, which is absent."

Point IV presupposes that section 514.040 is applicable to Mother. As we addressed above, this is not the case. Mother's failure to demonstrate how section 514.040 applied to her was fatal in Point I. It is fatal to Point IV, as well. The trial court did not err in not applying section 514.040 because section 514.040 does not apply to Mother. Accordingly, Points I and IV are denied.[19]

---

[19] Mother's argument in Point I contains other arguments which were not addressed in her Point on Appeal. Rule 84.04(e) requires that the argument "shall be limited to those errors included in the 'Points Relied On.'" "[C]laimed errors that are raised only in the argument portion of the brief but not contained in a point relied on are not preserved for [appellate] review." *Crawford v. Peterson*, 698 S.W.3d 172, 177 (Mo. App. W.D. 2024) (alterations in original) (quoting *Maxwell v. Div. of Emp. Sec.*, 671 S.W.3d 742, 751 (Mo. App. W.D. 2023)). For the reasons discussed, we decline to address Mother's multitude of arguments outside the scope of Point I.

**Point V**

In Point V, Mother argues the trial court erred by imputing Mother's wage in its child support calculation in violation of Missouri's child support obligation guidelines. Specifically, Mother claims "said calculations were not based on probable earning projection sources" in violation of 13 C.S.R. 40-102.010.

Mother's reliance on 13 C.S.R. 40-102.010 is misplaced. 13 C.S.R. 40-102.010 is a section of the Code of State Regulations entitled "Child Support Obligation Guidelines." The preamble of this chapter provides its purpose, stating, "This rule sets forth the guidelines *to be followed by the Family Support Division* to determine the current amount of support due when establishing or modifying child support obligations." *Id*. (emphasis added). Said simply, the citation Mother provides is applicable only to administrative, Family Support Division actions. Mother does not appeal from a decision of the Family Support Division, either directly or indirectly. Thus, 13 C.S.R. 40-102.010 is inapplicable to the case at bar. Rather, the trial court was correct in applying section 452.340, Rule 88.01, and Form 14 in determining the appropriate amount of child support in this action, all as set forth in the trial court's judgment.

Point V is denied.

## Conclusion

For the above and foregoing reasons, the judgment of the trial court is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.